THOMPSON *et al.*, *Appellants*, v. ISH *et al.*

1.  **Wills**: TESTAMENTARY CAPACITY : UNDUE INFLUENCE : EVIDENCE.
    Where the testamentary capacity of the testator and undue influ-
    ence exercised upon him are in issue, it becomes material to know
    what were his previous purposes, intentions and state of mind,
    and statements made by him at, before and after making the will
    in question are competent evidence for these purposes.

2.  ———: ———: ———.: ———. It is not essential that such
    statements should be of the *res gestæ* to be admissible, though
    their value as evidence diminishes as they become more remote
    from the date of the will.

3.  ———: ———: ———: ———: PRACTICE. The failure of the
    court to declare at the time of the admission of statements made
    by the testator before and after the date of the will that they were
    only competent for the purpose of showing the state of the testa-
    tor's mind and affections will not constitute error, where it so
    instructed the jury at the close of the evidence.

4.  ———: ———: ———. The contents of a prior will which had
    been revoked by the one in question may be given in evidence to
    show the fixed purpose and intention of the testator at the time,
    where it is substantially the same as the last, and the issues are
    want of testamentary capacity and undue influence.

5.  ———: EVIDENCE. Upon the trial of the validity of a will the
    triers should be placed in the position of the testator, as nearly as
    possible, so as to be able to consider all of the evidence from his
    point of view at the time he made the will, and for this purpose it
    may be shown that some of the children of the testator were then
    in good circumstances, and others were not.

6.  ———: ———: PHYSICIAN. The protection afforded by the
    statute (R. S. 1879, sec. 4017), against calling a physician to give
    evidence of information acquired in a professional character from
    his patient, may be waived by the latter or those representing him
    after his death, for the purpose of protecting rights acquired
    under him.

7.  ———: ———: ———. In a dispute between the devisee and
    heirs at law, all claiming under the deceased, whether devisee or
    heirs may call the attending physician of the deceased as a
    witness.

Thompson v. Ish.

8. **Practice** : RECALL OF WITNESS : IMPEACHMENT. A witness may be recalled for the purpose of laying the foundation for his impeachment as to statements made by him subsequent to the date of his testifying, although he has been discharged.

9. ———— : REMARKS OF COURT. The remarks of the court, upon excluding the testimony of one physician, to show the reputation and standing of another before his deposition had been read, that the latter's "character and standing as an eminent physician is part of the history of Missouri, and, if the courts and juries take notice of the facts of history, the evidence is immaterial," were improper and should not have been made, but do not constitute reversible error.

10. **Wills**: TESTAMENTARY CAPACITY : EVIDENCE. Testamentary capacity cannot be proved by neighborhood rumors. But the testimony of a witness that the testatrix was "known to the community as a strong-minded woman" will not constitute reversible error, where there was a great amount of competent testimony to the same effect.

11. **Practice** : EXPERT TESTIMONY : QUALIFICATIONS OF WITNESS. The court must determine, in the first instance, whether a witness who is offered as an expert possesses the proper qualifications, but the value of the testimony of such witness is a question for the jury, and depends upon the skill of the witness in his profession, the extent of which may be shown by one who speaks from knowledge.

12. **Wills**: DISPOSING MIND. A testator who knows that he is disposing of his property by will, to whom he is giving it, and the general nature and character of the property is possessed of a sound and disposing mind.

13. ———— : UNDUE INFLUENCE. The influence of a wife or child upon a testator, while the latter has power to deliberate and estimate the inducements, will not avoid the will, if the influence is exerted in a fair and reasonable manner, and without fraud or deception. The influence of one occupying such relation to the testator, to avoid the will, must be such as to overreach and destroy the free agency and will power of the testator.

14. ———— : EVIDENCE. A prior will which has been revoked may be given in evidence for the purpose of showing the then fixed purpose and intention of the testator as to the disposition of his property, and it makes no difference, for such purpose, whether the will was formal in its execution or not.

*Appeal from Ray Circuit Court.*—HON. GEO. W. DUNN, Judge.

AFFIRMED.

*R. A. DeBolt* and *Wallace & Chiles* for appellants.

(1) The lower court erred in remarking from the bench, while deciding upon the objections of plaintiffs to the competency of the question asked by James D. Ish, by his attorneys, to Dr. Henderson, his witness, as to the reputation and standing of Dr. Joseph M. Wood as a physician and surgeon, whose deposition, taken by said James D. Ish, was on file in this cause, that "Dr. Wood's character and standing, as an eminent physician, was part of the history of Missouri, and, if the courts and juries took notice of the facts of history, the evidence was immaterial." This evidence was offered and the remark of the court made before Dr. Wood's deposition was offered, and his reputation had not been attacked. *Naughton v. Stagg*, 4 Mo. App. 274-276 ; *State v. Cooper*, 71 Mo. 436 ; *State v. Thomas*, 78 Mo. 327. (2) The circuit court erred in admitting in evidence the statement of Mrs. Martha M. Ish, at the time of making an alleged former will in April, 1882, at the City Hotel in Lexington, to the effect she wanted "Don" to have her land, except forty acres which she might want to use. (3) The circuit court erred in allowing the witness Rathbun to state the provisions and contents of an alleged paper made in April, 1882, as the contents of a will. (4) The court erred in admitting in evidence statements of James D. Ish 'as to what he thought the property his sisters acquired from their husbands was worth. (5) The court erred in admitting those portions of the deposition of Dr. J. M. Wood. Dr. Wood was incompetent to testify to facts and information acquired by him as the physician and

surgeon of Mrs. Martha Ish, or by consultation with Dr. Henderson, her family physician, and especially facts having reference to the condition and soundness or unsoundness of the mind of Mrs. Martha Ish at the time of his visit to her as such physician and surgeon. The inhibition or veil of privilege, or secrecy, imposed by the statute, applies to information acquired by a physician from inspection, examination or observation of the person of the patient, as well as to information acquired by oral communications; and would even apply to information acquired in a consultation with the family physician of the patient. *Gartside v. Ins. Co.*, 76 Mo. 466 and cas. cit.; *Briggs v. Briggs*, 20 Mich. 34; *Groll v. Tower*, 12 Mo. App. 585; *Norton v. Moberly*, 18 Mo. App. 457. And this evidence of Dr. Wood is not admissible under the theory of a waiver of the objections thereto, by the representatives of the patient, recognized in *Groll v. Tower*, 85 Mo. 253–256, and *Carrington v. City of St. Louis*, 89 Mo. 216, as, surely, in this case, it cannot be claimed that James Doniphan Ish is the representative of his mother, Martha Ish, as against the other children and grandchildren, eight sets of heirs of Martha Ish. And the administrator, *pendente lite*, does not and could not waive such objections to the evidence in a suit to contest the validity of the will of deceased. Plaintiffs, as the children and grandchildren of Martha Ish, certainly had the right to object to the evidence of Dr. Wood. *Edington v. Ins. Co.*, 67 N. Y. 194–196 ; 1 Greenl. Ev. [4 Ed.] secs. 236, 237, 238, 243. (6) The court erred in overruling plaintiffs' objections to defendant James D. Ish being permitted by the court, in rebuttal, to recall Sawney Brown, colored; as plaintiffs' witness, for the purpose of asking him an impeaching question after such witness had been examined and discharged nearly a week before, and had been home and returned, and was no longer plaintiffs' witness and might have been

tampered with by the other side; and in permitting said Sawney Brown to answer such question. (7) The circuit court erred in allowing the witness Rathbun to testify to the fact that "Mrs. Ish was known to the community as a strong-minded woman." (8) The court below erred in overruling plaintiffs' objections to the question propounded, by defendant James D. Ish, to Dr. John B. Alexander, his medical witness, viz.: "State your opinion of the qualifications of Dr. Henderson as a physician?" and in permitting said Alexander to answer such question, as well as in overruling plaintiffs' objections to the answer. One expert witness cannot prove the "qualifications" of another expert. This evidence was a make-shift, a make-weight. *Washington v. Cole*, 6 Ala. 213; *Tullis v. Kidd*, 12 Ala. 648; *Singleton v. Sargent*, 31 N. H. 109; *Brabo v. Martin*, 5 Miller, 275; Lawson on Expert Ev., pp. 130, 138, 139, 140; *Newmarket v. Insurance Co.*, 30 Mo. 165; *Dickey v. Maliche*, 6 Mo. 177. (9) The instructions for defendant are erroneous. (*a*) The definition of soundness of mind there given is imperfect and erroneous. (*b*) It tells the jury that, on the facts therein hypothecated, deceased, Martha Ish, as a matter of law "was of sound mind" instead of leaving to the jury to find as a fact from the evidence that she was of sound mind. (*c*) It is argumentative, it hypothecates an imperfect definition of testamentary capacity, and, *arguendo*, tells the jury, therefore, she, Mrs. Ish, was of sound mind. (*d*) It in effect ignores the question of "undue influence" by failing to define the same and requiring the jury to look through a number of mixed and erroneous subsequent instructions for "undue influence as afterward defined," no one of which subsequent instructions of defendant James D. Ish contains a correct or intelligible definition of what constitutes in law "undue influence" in the making of a will, but contains imperfect, inconsistent

and misleading definitions thereof. (10) The court below erred in refusing the instruction number 20 asked by plaintiffs. This instruction is clear law, not covered by any other instruction given, and was especially important in view of the uses made by defendant James D. Ish of this will made in April, 1882, a year before the making of the will in controversy, to supply want of mind and recollection of her property, children and grandchildren of the testatrix in making this new will. R. S. 1879, sec. 3962. Manifestly the statute means that the witnesses shall subscribe their names at the request of the person making the will. *Miltenberger v. Miltenberger*, 78 Mo. 29 ; *Odenwalder v. Schoor*, 8 Mo. App. 458 ; *Elliott v. Welby*, 13 Mo. App. 19 ; *St. Louis Hospital Ass'n v. Williams*, 19 Mo. 609 ; *Northcutt v. Northcutt*, 20 Mo. 266 ; *Catlett v. Catlett*, 55 Mo. 330 ; *Woolly v. Woolly*, 95 N. Y. 231 ; *Mitchell v. Mitchell*, 77 N. Y. 77.

*J. D. Shewalter* for respondents.

(1) On the contest of a will, evidence of the declarations and statements of the testatrix as to her intentions and purposes in the disposition of her property are competent, as showing the condition of her mind and the state of her affections. *Gibson v. Gibson*, 24 Mo. 227; *Twigley v. Cowgill*, 48 Mo. 291; *Rule v. Maupin*, 84 Mo. 587. (2) On the trial of the issue of will or no will, where want of mental capacity and undue influence is alleged, evidence of a former will, and its provisions, are admissible as evidence of the intentions and purposes of the party at that time. *Muller v. Hospital Ass'n*, 73 Mo. 242; *Thomas v. Stump*, 62 Mo. 278. (3) All the circumstances surrounding the deceased and the parties, at the time of the execution of the paper, is competent; hence, evidence of the financial condition of those who, but for

the will, would be the heirs is admissible; such evidence tends to rebut any presumption arising from the unequal distribution. Nor was there error in admitting the evidence of J. D. Ish thereon. The fact was amply proved by other evidence, including the parties. And the Daniels, whose statements are objected to, are parties, and their statements as to their financial condition is evidence as to them. (4) Having introduced Sawney Brown, plaintiffs stood sponsors for him; it was proper, under repeated decisions, to recall him for the purpose of impeachment, and plaintiffs' ground of objection, "that he might have been tampered with by the other side," is hardly admissible, except as an admission that they introduced a witness susceptible of being "tampered with," and he the principal witness for plaintiffs. (5) Plaintiffs having attacked the standing of Dr. Henderson as a physician, and shown he had no diploma, it was competent to show Dr. Henderson's standing and qualifications as a physician. Hence there was no error in showing by Dr. Alexander that Dr. Henderson was "above the average of physicians in Missouri." (6) In this case two subscribing witnesses to both papers prove the soundness of mind. (7) Defendants having offered to prove the competency of Dr. Wood to form an opinion as to the soundness of mind of a patient (Dr. Wood having, through modesty, declined to answer that question, though stating the length and extent of his practice) the same was objected to by plaintiffs as incompetent and irrelevant; and, because Dr. Wood as a physician had not been attacked, objections were sustained, and appellants cannot complain of the words used (if used) in deciding in their favor. Besides, as one ground of objection was that Dr. Wood had not been attacked as a physician, the presumption is in his favor, and the court could not strengthen or give additional weight to this legal presumption. (8) Where the evidence is conflicting,

experts, though they have heard all the evidence, cannot give an opinion "on the facts shown by the evidence," (for what facts are shown must be decided by the jury, not the witness) but the questions must be hypothetically put. (9) There was no error in giving or refusing instructions; a sound mind is a mind and memory, enabling the party to know and comprehend that he or she is disposing of his or her property by will, the general nature, character and value of the property being so disposed of, and to whom the same is being given. *Brinkman v. Rueggesick,* 71 Mo. 556; *Benoist v. Murrin,* 58 Mo. 307; *Young v. Ridenbaugh,* 67 Mo. 574; *Jackson v. Hardin,* 83 Mo. 175; *Appleby v. Brock,* 76 Mo. 314. (10) The instructions applying the law as to undue influence have repeatedly been approved by this court, especially in view of number eight for plaintiffs, which told the jury if J. D. Ish had, from association, etc., had an influence over the mind of his mother, and though he said nothing and did nothing to influence her, yet if his influence operated on her mind, and she thus made the will different from what she otherwise would have done, the will was procured by undue influence. *Jackson v. Hardin,* 83 Mo. 175; *Rankin v. Rankin,* 61 Mo. 295; *Brinkman v. Rueqqesick,* 71 Mo. 553; *Sunderland v. Hood,* 84 Mo 293.

BLACK, J.—This is a suit to set aside the will of Martha Ish, late of Lafayette county. The will bears date April 17, 1883, and she died on the second day of May following, at the advanced age of nearly eighty. She left surviving her three daughters and one son, the defendant, James D. Ish, and a number of grandchildren, who are the children of her four deceased children.

Mrs. Mary Handly, one of the surviving daughters, is not named in the will. To the other children and grandchildren, except James D. Ish, the testatrix gave one dollar each, and to James D. Ish she gave the

residue of her estate, consisting of four hundred and seventy acres of land of the value of about sixteen thousand dollars, and some personal property of no great value.

Though Mary Handly and some of the grandchildren are made co-defendants with James D. Ish, he is the only real defendant, and will be designated as the defendant. The will is assailed on two grounds: *First.* Want of mental capacity on the part of the deceased; and, *second*, undue influence exercised by James D. Ish, who is alleged to have been her confidential adviser and agent. There were two mistrials in Lafayette county, when the venue was changed to Ray, and a trial there resulted in a verdict sustaining the will.

The evidence took a wide range on both sides, so that it is out of the question to give more than an outline of it. The husband of Martha Ish died testate in 1869, leaving to her the lands in question, and to the defendant, James D. Ish, the home place. Martha Ish continued to live with the defendant, on the home place, until she died, in 1883. In April, 1882, she executed a will, whereby she gave her lands, except forty acres, to James D. Ish, and the balance of her property she devised and bequeathed to her children and grandchildren. That will was made in view of a contemplated visit to two of her daughters, Mrs. Rice and Mrs. Handly, who resided in the state of California. She made the visit, returning to this state with her son, the defendant, in November of that year. She is shown to have been a woman of more than ordinary strength of mind, and determination, and attended to her property affairs partly herself and partly through the defendant. She became confined to her room in March, 1883, and the will in question was executed on April 17, as before stated.

Dr. Henderson, who was her physician, and is an attesting witness, testified that she began to give way

in March; that she had tumors on her head, one of which she believed to be a cancer, and from which she believed she would die; that she had partial paralysis on one side; that she was a large, fleshy woman, and had to be raised up by others to sign the will, and she made two efforts before she completed her signature; that her mind was then, and up to the last of the month, good, though she suffered much from the tumors and a pain in her arm. Mr. Rathbun, who prepared both wills, says he took the old one to the house and read it to her, and she said she wanted to change it and gave him directions as to the changes; that he was in her room from ten to two o'clock, except at dinner time; that her voice was strong, and he saw no change in her mind; that, when the new will was signed, the old one was destroyed; that he took the names of the children from the old will, and no one discovered the omission of the name of Mrs. Handly.

There is much other evidence tending to show that Mrs. Ish was perfectly rational at, before and after she signed the will, and that it was her own act. On the other hand, Mrs. Handly says her mother was not in a condition to transact any business on March 18. Mrs. Thompson, one of the plaintiffs, was with her mother from March 20 to April 13, and again after the will had been executed. She describes the condition of her mother, and her evidence is to the same effect; says she never heard of the will until after the death of her mother.

The evidence of these ladies, and that of some other witnesses, tends to show that the will was the result of solicitation on the part of defendant, and that in the absence of the sisters he controlled her actions. There is evidence tending to show that he induced her to leave California before she had completed her visit; and on the other hand there is evidence to the effect that he went for her at her own request.

1.  The court awarded the opening and closing of the case to defendant. It appears the testatrix, in the month of May, 1882, and just before going to California, went to Lexington, stopped at a hotel, and, sent for Mr. Rathbun to prepare her will. He says, after speaking in general terms of the interview, "she said she wanted Don. Ish to have her land, except forty acres which she might want to use." She talked freely with the landlord, with whom she was acquainted, and consulted him as to the best method of carrying out her intentions. He advised her to make a deed, but she did not adopt the advice. To the admission of these statements, the contestants objected.

In the early case of *Gibson v. Gibson*, 24 Mo. 227, the plaintiff offered to prove that the testator said he had never made a will, that if he signed one they got him drunk, and made him sign it. The statements were offered as proof of the facts stated, namely, that he never made a will, and that if he signed one they made him do it while drunk. The evidence, it was held, was properly excluded when offered for the sole purpose of proving the facts stated; but the court goes on to say that the declarations of the testator are clearly admissible when the condition of the testator's mind is the point of contention, or it becomes material to show the state of his affections.

The charges here are that Mrs. Ish did not possess testamentary capacity, and that the will is not her will, but that of the defendant. It becomes material to these issues to know what were her previous purposes, intentions and the state of her mind, and her statements at, before and after making the will in question are competent evidence for these purposes. *Rule v. Maupin*, 84 Mo. 587. It is true those statements were not of the *res gestæ*, but that is not essential to the admission of such evidence. The value of such declarations diminishes of course, in proportion as they are remote from the

date of the act in question. Indeed the objections to all this evidence concede the competency of these statements for the purposes just stated. The court did not, however, so state at the time the evidence was admitted, but by an instruction, given at the close of the evidence, told the jury that they could only consider the statements made by Mrs. Ish before and after the date of the will in question as showing the state of her mind and of her affections. This was sufficient.

2. Nor did the court err in allowing the witness Rathbun to testify as to the contents of the will of April, 1882. That will, it is true, had been revoked by the execution of the new and the destruction of the old one. The evidence was not, however, offered for the purpose of establishing it as the will of Mrs. Ish. It was offered for the purpose of showing her fixed purpose and intention at that date. It differs from the one in question only in this, that by the first she gave to her children and grandchildren, other than James, sums amounting in all to about three hundred dollars, and by that will, they were made residuary devisees; so that, by it, they would have received the forty acres of land and some three hundred dollars, instead of one dollar each. By both wills, she gave the bulk of the property to James, and they are substantially the same. If, as we have seen, the declarations of the testator are admissible when the issues are want of testamentary capacity and undue influence, then it must be competent to put in evidence, for like purposes, this former will. It tends to show that for a year before making the will in question, she had formed the purpose of giving the bulk of her property to the defendant. The fact that she had formed that purpose at that date tends to show that the present will was not the result of undue influence, exercised by defendant in her last sickness, and when she had become weaker in body and probably in mind. Says Redfield : "Evidence of former wills and of other

pecuniary arrangements for the wife is also admissible, as having a bearing upon the question, whether the testator has understandingly and of his own free will changed his settled views." 1 Redf. on Wills [4 Ed.] *538. The law allows a wide range of testimony on the issues of undue influence and weakness of mind, and, it seems, former wills may be introduced to show undue influence; and, on the other hand, they may be introduced to show the previous purpose of the testator in regard to the disposition of his property, and thus shed some light on the question whether the contested will was the testator's own free act. *Ib.*, *537; *Love v. Johnston*, 12 Ire. L. 358; *Hughes v. Hughes*, 31 Ala. 520.

3. During the trial, defendants introduced some evidence, over the objections of plaintiffs, to the effect that Mrs. Rice and Mrs. Thompson were well provided for by reason of the fact that their husbands were large property-owners, the one residing in the state of California, and the other in this state. In considering this objection, it is to be remembered that plaintiffs, in their cross-examination of James D. Ish, drew out the fact that he was in debt and his property heavily encumbered. Mrs. Ish had been living with him for about fourteen years, and became attached to his wife, who appears to have treated the old lady with kindness and affection. It is not unreasonable to believe that the testatrix, in making a disposition of her property, would take into consideration the fact that some of her children were in good circumstances and that others were not. If such considerations would naturally have some influence upon her mind, it is difficult to see why they may not be put in evidence, keeping within reasonable bounds. The triers of the facts should be placed in the position of the testatrix, as near as possible, so as to be able to consider all the evidence from her point of view when she made the will in dispute. We conclude there was no error in the admission of this evidence.

4. A far more difficult question arises over the deposition of Dr. Joseph Wood, which was read in evidence by defendant. Dr. Wood was called in to consult with Dr. Henderson three or four days after the will in question had been executed. He says: "I remained at her residence all night, and had two good long conversations with her on the subject of her disease. She gave me a very satisfactory description of her disease." Being then asked his opinion as to the condition of her mind, he says: "I believe and am of the opinion that Mrs. Ish was perfectly sound in her mind at the time I had the conversations with her." This, and other portions of the deposition, were objected to on the ground that Dr. Wood was, under the statute, an incompetent witness, and could not disclose the matters testified to by him.

Section 4017, Revised Statutes, 1879, provides: "The following persons shall be incompetent to testify: * * * fifth, a physician or surgeon, concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon." This statute is very emphatic, and it places the seal of secrecy upon information acquired by observation as well as that acquired by oral communication. *Gartside v. Insurance Co.*, 76 Mo. 446. There can be no doubt but the information upon which Dr. Wood based his opinion was acquired from the testatrix while attending her in a professional character, and the information was necessary to enable him to give her and her attending physician advice concerning her disease. The opinion which he expresses is based upon the information thus acquired. The physician being prohibited from disclosing the information, he certainly cannot give an opinion based upon his knowledge thus acquired. He is no more at liberty to give an opinion

upon such knowledge than he is to detail the facts revealed to him by the patient.

The protection afforded by the statute may, however, be waived by the patient, and he does waive it by calling a physician to give evidence of information acquired in a professional character. *Groll v. Tower*, 85 Mo. 249; *Carrington v. City of St. Louis*, 89 Mo. 212; *Blair v. Railroad*, 89 Mo. 337. In the first of these cases, the widow brought suit to recover damages for injuries received by her husband, and from which injuries he died. It was there said: "Where the evidence of the attending physician is offered by the patient or his representatives, it is competent and admissible. Where it is offered by the opposite party, the physician cannot testify against the objection of the patient or his representatives. And accordingly it was ruled that the physician should have been allowed to testify when offered by the widow.

The Michigan statute is in substance and effect the same as our statute. Comp. Laws, 1871, sec. 5943. In *Frazer v. Jennison*, 42 Mich. 209, a will dated in May, 1877, was contested on various grounds, and, among them, unsoundness of mind and undue influence. The proponents of the will, who were special administrators appointed by the probate court, proved by a physician that he had been employed by the testator in a professional capacity from September, 1876, and the physician was then allowed to testify that the mind of the deceased was sound and to describe the particulars of the disease. Cooley, J., after quoting the statute and saying the trial court did not err, uses this language: "This statute, as we have held, covers information acquired by observation while the physician is in attendance upon his patient, as well as communications made by the patient to him; but the rule it establishes is one of privilege for the protection of the patient; and he may waive it if he sees fit. *Scripps v.*

*Foster*, 41 Mich. 742; and what he may do in his life-time, those who represent him after his death may also do for the protection of the interests they claim under him."

On the other hand, a different ruling prevails in the states of New York and Indiana. Section 833 of the New York Code (Throop's Annotated Code) relates to ministers, section 835 to attorneys, and section 834 provides that: "A person duly authorized to practice physic or surgery shall not be allowed to disclose any information which he acquired in attending a patient, in a professional capacity, and which was necessary to enable him to act in that capacity." And section 836 provides that "the last three sections apply to every examination of a person as a witness, unless the provisions thereof are expressly waived by the person confessing, the patient or client." It seems to have been the practice in the surrogate's court to admit the evidence of the attending physician of the testator in the probate of wills. *Allen v. Public Administrator*, 1 Bradf. 221; *Whelpley v. Loder*, 1 Dem. 368. But in *Westover v. Ins. Co.*, 99 N. Y. 56, which was an action by an executor on a policy of insurance, it was held by the court of appeals that the executor could not waive the privilege of the statute, and the argument goes to the extent, we think, of holding that no one but the patient himself can make the waiver. *Renihan v. Dennin*, 103 N. Y. 577, was a case tried on an appeal from the judgment of a surrogate court, admitting a will to probate, and it was held that the attending physician of the deceased was not a competent witness. This ruling was followed in contested will proceedings in the subsequent cases of *In re Coleman*, 111 N. Y. 220, and *Loder v. Whelpley*, 111 N. Y. 239. The Indiana statute is not essentially different from the statute of this state, and in *Heuston v. Simpson*, 115 Ind. 62, the court followed the rule of the court of appeals of New York in a testamentary case.

The statutes of this state, and those of New York, prohibit the physician from disclosing the information acquired under the circumstances specified; but the New York statute goes further, and says the prohibition shall apply to every examination of the designated persons, a physician being one of them, unless "expressly waived by the patient." It not only creates the privilege, but defines by whom it may be waived, and says the waiver must be *express*. Our statute contains no such qualification. The difference in the statutes may fairly lead to different results.

Notwithstanding our statute provides for no exception, still it deals with a privilege, and it must be taken as established law that the privilege may be waived by the patient; and we have held that it may be waived by the representative, and, in this, our ruling accords with that of the supreme court of Michigan under a like statute. If the patient may waive this right or privilege for the purpose of protecting his rights in a litigated cause, we see no substantial reason why it may not be done by those who represent him after his death, for the purpose of protecting rights acquired under him.

Some light may be thrown upon this question by analogy from the rules of law applied to confidential communications between client and attorney. Such communications, it is held in *Russell v. Jackson*, 9 Hare, 390, must not be revealed in cases where the rights and interests of a client, or those claiming under him, come in conflict with the rights and interests of third persons; but this rule, it is held, does not apply to cases of testamentary disposition of property by the client. The disclosure in such cases, it is considered, can affect no right or interest of the client, and is therefore not within the reason of the rule. Taylor says : "In stating that the privilege does not terminate with the death of the client, care must be taken to distinguish between

cases where disputes arise between the client's represen-
tative and strangers, and those in which both of the liti-
gating parties claim under the client." As to the latter
class of cases he says, "it would be obviously unjust to
determine that the privilege should belong to one claim-
ant rather than the other." 1 Taylor on Ev., sec. 928, p.
780. See also *Blackburn v. Crawfords*, 3 Wall. 175;
*Scott v. Harris*, 113 Ill. 454.

It is difficult to see why the rule of exclusion
should apply in case of a physician, and not of an attor-
ney. An attorney is declared, by the third clause of
section 4017 of our statutes, to be incompetent to testify
concerning communications made to him "without the
consent of the client." The clause in relation to physi-
cians does not contain this quoted qualification; but the
third clause is simply declaratory of the common law;
and, if the difference between the clauses argues any-
thing, it should be that the physician cannot testify
with or without the consent of the patient. Whatever
may have been the rule at common law, the statute
places attorneys and physicians on substantially the
same ground. We conclude, as before, that when the
dispute is between the devisee and heirs at law, all claim-
ing under the deceased, either the devisee or heirs may
call the attending physician as a witness.

5. The plaintiffs, in putting in their evidence,
called and examined Sawney Brown (colored). Nearly,
if not a quite, a week thereafter, and when the defend-
ant produced evidence in rebuttal, he called the witness
Brown, and asked him if he did not, at a designated
time and in the presence of named persons, say he knew
nothing about the case, and only swore to what Joe
Lightner told him to swear. The witness denied
making the statement, and the named persons were
called and testified that he did make it. The objections
made to all this evidence are that Brown had been dis-
charged as a witness, and that the question asked to

lay a foundation to impeach him related to a date subsequent to that at which he had testified. In the first place, there is nothing to show that the witness Brown had been discharged, and, if he had, it can make no difference. The law is not so lame that a witness can admit that he has testified to matters of which he knew nothing, and it then be out of the power of the opposite party to impeach him. It would have been error for the court to have ruled otherwise than it did. The argument is made that this witness was entrapped into foolish talk by a friend of the defendant, but the argument addresses itself to the jury, and not to this court. The witness made a full and lengthy explanation, and the question of his veracity was one for the jury to determine.

6. The defendant attempted to show the reputation and standing of Dr. Wood, whose deposition had not yet been read, as a physician and surgeon by another physician. The judge excluded the evidence, but remarked from the bench: " Dr. Wood's character and standing as an eminent physician is part of the history of Missouri, and, if the courts and juries take notice of facts of history, the evidence is immaterial." These remarks of the judge were improper, and should not have been made, but do not constitute reversible error.

7. The witness Rathbun testified : " Mrs. Ish was known to the community as a strong-minded woman." This evidence ought to have been excluded, and why it was drawn out we cannot conjecture. Testamentary capacity cannot be proved by neighborhood rumors. *Brinkman v. Rueggesick*, 71 Mo. 553. As the evidence is reported, we do not understand the witness to speak of the date of the last sickness of Mrs. Ish, but of a prior date. In view of the vast amount of competent evidence to the same effect, we do not see how this statement of the witness could have prejudiced the plaintiffs. The judgment should not be reversed for this error.

8. Dr. Henderson, who testified in behalf of defendants, both as a physician and a subscribing witness, stated on cross-examination that he had no diploma, and did not graduate at a medical college, but had a certificate as a registered physician, and attended a private medical school, but did not graduate. Later in the case, the defendant called Dr. Alexander, who said he knew Dr. Henderson, and, being asked his opinion of the qualifications of Dr. Henderson as a physician, said: "I regard him as above the average of doctors in Missouri." It is, of course, for the court to determine in the first instance whether a witness who is offered as an expert possesses the proper qualifications, but the value of the evidence which the witness may give is a question for the jury; and, as that value must depend much upon the skill of the witness in his craft or profession, we can see no serious objection to the admission of evidence which goes to show the extent of his skill. Dr. Alexander knew Dr. Henderson, and it is from that knowledge, and from that alone, he speaks, and this he could do. *Laros v. Commonwealth*, 84 Pa. St. 200.

9. Twelve instructions were given at the request of the defendant, and nineteen at the request of plaintiffs, one of them having been modified by the court. On the question of capacity to make a will, the court, at the request of defendant, in substance directed the jury, that a person of sound mind, above the age of eighteen years, has the right to dispose of his or her property to any person, and to leave others unprovided for; that neither old age, sickness, feebleness or bodily infirmity, or mere weakness of mind, incapacitates the making of a will; "that soundness of mind means the ability to know and comprehend that one is disposing of his property by will, the general value and character of the property, and to whom the same is being given. And if, therefore, the jury believe from the evidence that

Martha Ish signed the paper read in evidence as her will,  *  *  *  that at the time she had sufficient mind and memory to know that she was disposing of her property by will, to whom she was giving it, and the general nature and character of the property, then she was of sound mind, and, unless procured by undue influence as afterwards defined, you will find said paper to be her will, even though the jury may believe from the evidence she was old, infirm, sick and feeble, and nigh unto death, at the time she signed it, and for these or other causes her mind was not as vigorous and strong as it had once been, and her body was weak and feeble.''

The fifth instruction for plaintiffs is in these words :

"5. The jury are instructed that, to constitute a sound and disposing mind and memory in said Martha Ish,  *  *  *  it was not only necessary that she should have then been capable of comprehending the nature and extent of her property, and the persons who (were) intended to be provided for by the will, but she must also have been able to dispose of her property with understanding and reason, and it is not sufficient that she was then merely capable of understanding what she was engaged in.''

The instructions for the defendant do not, as seems to be supposed, withdraw from the consideration of the jury the circumstances of old age, weakness of body and a want of a vigorous mind. They simply assert that, if she possessed a disposing mind, these circumstances alone did not disable her from making a will. Other instructions for the plaintiffs left it to the jury to take all these facts in evidence into consideration, including the fact that she gave all her property to defendant. These definitions and description of a sound mind, namely, the ability on the part of the testatrix to know that she was disposing of her property by will, and to whom she was giving it, and the general nature

and character of her property, come up to the standard of a sound and disposing mind, repeatedly asserted by this court. *Brinkman v. Rueggesick*, 71 Mo. 556; *Appleby v. Brock*, 76 Mo. 314; *Jackson v. Hardin*, 83 Mo. 78; *Myers v. Hauger*, 98 Mo. 433.

10.   For the defendant, the court gave this instruction upon the subject of undue influence :   " If the jury believe from the evidence that said paper was dictated by Mrs. Ish, that it expresses her directions, and embraces such bequests and devises as she then desired to make, then the jury are instructed the same was not procured by undue influence; and, if  *  *  *  she had the mental capacity to make a will as elsewhere defined, you will find said paper to be her will, even though you may believe from the evidence that from association, kindness, or other reasons, James D. Ish had an influence with his mother, and at times looked after and transacted some of her business."

And, at the request of the plaintiff, the court gave the following instruction :   " 11.   If the jury believe from the evidence that the mind of deceased, Martha Ish, either from sickness, disease, age, bodily and mental decay and over-weaning confidence was subject to the dominion and control of her said son, James D. Ish, and that he exercised such power and influence over her mind and will, in the disposition of her property by such will, as to destroy her liberty and free agency, and to cause such disposition of her property to be made as to suit the purposes and wishes of defendant, James D. Ish, and not her own, then such will, in law, is not the will of said Martha Ish, and the jury will find the issue submitted to them for the plaintiffs and against such will."

Other instructions were given at the request of contestants, reciting the various circumstances in evidence, and informing the jury, if they were true, they should be considered in determining the question of undue

influence, and were facts from which undue influence might be inferred. They are, in their scope, such instructions as it was said should have been given in the case of *Harvey v. Sullens*, 46 Mo. 147.

The influence which a child may acquire from association with and attention and acts of kindness to a parent will not invalidate a will. The influence of a wife or child upon a testator, while he has power to deliberate and estimate the inducements, will not avoid the will, ·if the influence is exerted in a fair and reasonable manner, and without fraud or deception. The influence of one occupying such relation to the testator, to avoid the will, must be such as to overreach and destroy the free agency and will power of the testator. *Brinkman v. Rueggesick, supra; Jackson v. Hardin, supra; Myers v. Hauger, supra.* The instructions given upon the subject of undue influence are favorable to the contestants.

11. The twentieth instruction to the effect that the will of 1882 could not be considered, unless it was signed by Martha Ish in the presence of two witnesses, who signed the same at her request, and not the request of her, attorney, was properly refused. That will was offered for the sole purpose of showing her then fixed purpose and intention as to the disposition of her property, and it is immaterial whether it was formal in its execution or not. Besides, the evidence is all to the effect that it was formally executed.

From the numerous questions raised in the briefs, we have selected and disposed of those which we think call for special notice. No substantial reason is shown why the judgment should not stand, and it is therefore affirmed. RAY, C. J., and BARCLAY, J., absent; the other judges concur.