HERNDON, Respondent, v. CITY OF SPRINGFIELD, Appellant.

St. Louis Court of Appeals, May 11, 1909.

1. **PERSONAL INJURIES: Evidence: Latent Disease: Instruction.** In an action for damages on account of an injury to the plaintiff's limb where the plaintiff testified that she was in sound health before the accident and in bad health with a stiffened limb after the accident, and the defendant offered evidence to show that the plaintiff was afflicted with rheumatism which caused the stiffened limb and expert testimony was offered to show that latent tuberculosis would contribute to bringing about the condition of the limb after the injury, it was proper to instruct the jury that if the injury was rendered more serious by means of some latent disease in the plaintiff's system, that fact was no defense to the plaintiff's action.

2. ———: ———: **Medical Attendance.** In an action for damages on account of personal injuries, an instruction on the measure of damages permitted the plaintiff to recover the rea-

137 App.—33

sonable value of medical aid and attention which had been or might thereafter be rendered, but the reasonable value of the medical attendance which she had received was unproved except as to one of the three physicians which attended her. *Held*, the error was not reversible, where the trial court compelled a remittitur of almost half the verdict rendered by the jury.

3. PRACTICE: Remittitur: Discretion of Trial Judge. It is within the discretion of the trial judge to order a remittitur of a portion of a verdict which he deems to be excessive and such order will not be reviewed in the absence of evidence to show that the size of the verdict was due to passion or prejudice.

4. ———: Remarks of Court: Expert Testimony. In an action for personal injuries, in overruling an objection to expert testimony, the trial judge made the remark, "I am not strong on expert testimony, as you all know, and I don't believe in broadening its scope," and the court gave the usual and-approved instruction relating to the credibility of witnesses; such remark was not reversible error.

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville*, Judge.

AFFIRMED.

*J. H. Mason* and *Barbour & McDavid* for appellant.

(1) Instruction No. IV asked for by and given for the plaintiff, in so far as it includes and deals with tuberculosis and other latent diseases, other than rheumatism, is erroneous and harmful, for the reason: (a) It is not based on the allegations of the petition and is not justified or supported by any testimony whatever. It submits issues to the jury on which there is no evidence. (b) It is directly opposed to all the evidence and the theory upon which the case was tried. (c) It permitted the jury, without any evidence, to speculate upon plaintiff's condition and to find that she had tuberculosis or some other latent disease, as a basis for their verdict. Under this instruction the jury might have believed the testimony of Doctors Terry, Boyd and Patterson and at the same time have come to the con-

clusion that the plaintiff was afflicted with tuberculosis, or some other latent disease, and that a slight fall had aggravated and brought about the condition in which the plaintiff appeared at the trial.  (d)  It is a roving commission authorizing the jury to enter the field of speculation and find for the plaintiff without any evidence.  It afforded a broad and dangerous field for the exercise of sympathy, passion and prejudice.  Chenoweth v. Sutherland, 107 S. W. 6; Haynes v. Trenton, 108 Mo. 130; Delaplain v. Kansas City, 109 Mo. App. 112; Danker v. Goodwin Mfg. Co. 102 Mo. App. 729; State v. Brown, 181 Mo. 220-221; Heinzle v. Railway, 182, Mo. 559; State v. Edwards, 203 Mo. 539; Wojtylak v. Coal Co., 188 Mo. 283; Chambers v. Railway, 111 Mo. App. 609; Peck v. Railroad, 31 Mo. App. 123; Glick v. Railroad, 57 Mo. App. 97.  (2)  The remittitur in this case is speculative, erroneous and unauthorized.  Kenedy v. Portman and Woempner, 97 Mo. App. 256; Smoot v. Kansas City, 194 Mo. 513; Slattery v. St. Louis, 120 Mo. 188; Gurley v. Railroad, 104 Mo. 233; Zurfluh v. Railroad, 46 Mo. App. 638; Hunter v. Mexico, 49 Mo. App. 17.  (3)  An examination of the testimony in this case will clearly show that the verdict of the jury is against the weight of the evidence.  Lehnick v. Railroad, 118 Mo. App. 611; Kenedy v. Transit Co., 103 Mo. App. 8; Bohle v. King, 114 Mo. App. 440; Young v. Ruhwedel, 119 Mo. App. 243.

*G. W. Goad* and *A. H. Wear* for respondent.

(1)  Plaintiff's instruction IV is a correct statement of the law, was supported by the evidence, was necessary and proper on account of the evidence produced by defendant and considered in connection with defendant's instructions Nos. 1 and 2 was not erroneous or harmful.  Smart v. Kansas City, 208 Mo. 162; Neff v. City of Cameron, 111 S. W. 1139; Elliott v. Kansas City, 174 Mo. 554; Deleplain v. Kansas City, 109 Mo. App. 107.  Owens v. Railroad, 95 Mo. 182; Brown v.

Railroad, 66 Mo. 588; Stroder v. Transit Co., 197 Mo. 616 l. c. 621; Railroad v. Kirbin (Tex.), 83 S. W. 709;. Railroad v. Brown, 16 Tex. Civ. App. 93, 40 S. W. 614. (2) Plaintiffs instruction No. V as to elements of damages for medical service is based on the pleadings, is justified by the evidence and is not harmful or erroneous. Gorham v. Railroad Co., 113 Mo. 421; Grady v. Transit Co., 102 Mo. App. 212; Harmon v. Transit Co., 102 Mo. App. 216; Spangler v. Transit Co., 108 Mo. App. 329; Brown v. Transit Co., 108 Mo. App. 316; Kaiser v. Transit Co., 108 Mo. App. 708; Young v. Railroad, 126 Mo. App. 12; Stoeber v. Transit Co., 203 Mo. 702; Duke v. Railroad, 99 Mo. App. 347; Noll v. Transit Co., 100 Mo. 370; Jennings v. Swift, 110 S. W. 21. (3) This case should not be reversed on account of the remittitur ordered by the trial court. Schergen v. Construction Co., 108 Mo. App. 262; Lindsay v. Kansas City, 195 Mo. 182; Horton v. Kansas City, 190 Mo. 69; Reynolds v. Transit Co., 189 Mo. 408; Devoy v. Transit Co., 192 Mo. 197; McGaffeny v. Railroad, 192 Mo. 144; McGaw v. O'Neal, 123 Mo. App. 691; Ice Co. v. Tamm, 90 Mo. App. 201; Clark v. Insurance Co., 61 Mo. App. 181.

STATEMENT.—A motion for rehearing having been filed and sustained, we have again considered it, aided by elaborate and earnest argument, oral and printed, by able counsel. On careful consideration, we see no reason to reach a different conclusion than that arrived at when the case was first heard and determined. The writer avails himself in the main of the statement and the greater part of the opinion heretofore handed down by Judge Goode.

In the early morning of April 17, 1906, the plaintiff stepped into a hole in the sidewalk while walking along one of the main thoroughfares of the city of Springfield. She immediately returned to her home, which was not far away, and bathed her injured foot and limb with liniment. About nine o'clock that morning she walked

Herndon v. Springfield.

five or six blocks to a store where she was employed, to
notify the proprietor that she would not work for him
longer, having obtained employment to begin the follow-
ing Monday, elsewhere.  Though plaintiff intended to
cease the employment she was in, she testified she would
have worked through the day of the accident if she had
not been hurt.  She returned from the store to her home
about eleven-thirty o'clock in the morning and, accord-
ing to testimony in her behalf, took to her bed solely
on account of the injury to her knee, and she was con-
fined to her bed between seven and eight months, though
occasionally she would go about the house on crutches.
The knee became anchylosed, that is stiff, and beyond
all human doubt, will remain so the rest of her life;
anchylosis being the stiffness or fixation of a joint, the
formation of a stiff joint; the joint becoming bony and
stiff, so that—in this case, the knee bones were united
and the joint became inflexible.  The present action was
instituted to recover damages from the city, the petition
counting on negligence in leaving uncovered the hole in,
the walk into which plaintiff stepped.  This hole was a
water pipe six inches in diameter, which, starting within
an inch or two of the surface of the sidewalk, was car-
ried down and connected with a subterranean drain.
The brick sidewalk was somewhat depressed around the
opening, and there can be no doubt the opening endan-
gered any one walking along there who was unaware of
its existence.  The answer is a general denial and a plea
of contributory negligence on the part of plaintiff, in
that it is charged she was walking in a careless and in-
different manner, stepping along without paying any at-
tention to where she was to put her feet and failing to
use her eyes to observe and thereby avoid the hole.  The
evidence proved conclusively the hole was in the walk
and tended to prove the city had both actual and con-
structive notice of the fact.  It also tended to prove the
fall of plaintiff as alleged and her consequent injury.
These facts being in evidence, we find no reason to hold

that the defendant's request for a direction for a verdict in its favor should have been given. The defendant's counsel are too able lawyers seriously to press this as error. The main contest at the trial was around the issue of whether the anchylosed condition of plaintiff's right knee was caused by the fall, and on this question there was a conflict in both the direct and the expert testimony. Plaintiff herself, and many witnesses in her behalf, testified she was a young woman about twenty-five years old, in apparently good health and without a halt or limp in her walk prior to the date of the accident, although her mother said she had never been strong. She is now a cripple, her knee joint inflexible. Such was the testimony of the members of her family and several acquaintances. On the contrary witnesses who were about the store where she had worked a week or two before the accident, testified she limped while there and complained of rheumatism. She swore she never had experienced a touch of rheumatism in her life. Some witnesses who visited her while she was bedridden, testified to deriving the impression from what she said that she was suffering from rheumatism. In the record is the opinion testimony of physicians on both sides, as well as some positive testimony by the physician who attended her, as to the probable cause of the stiff knee. The purport of the opinion evidence for plaintiff was, that the fall might have so injured the knee as to induce anchylosis, and yet not have been so painful or disabling at the time as to prevent her from going about as much as she said she did on the day of the injury; whereas the testimony of the physicians who were called as experts by the city, was, that a fracture or other injury to the knee as the result of a fall, severe enough to have resulted finally in anchylosis, must have rendered her unable to walk home, or, at least, to walk five or six blocks to the store where she was employed. A good deal of expert testimony was adduced by defendant in support of the hypothesis that rheumatism, tuberculosis or other septic condition may

settle in the knee joint and bring about anchylosis; while for the plaintiff this testimony was met by testimony to the effect that if a person's system was affected by such a malady, the fall plaintiff alleges she met with would start into activity or even exacerbate the tuberculor or rheumatic condition of the system and thereby ultimately bring on anchylosis. The jury returned a verdict in plaintiff's favor for $5,825, but a motion for a new trial having been filed, the court compelled plaintiff to remit $2,825, under pain of having the motion sustained. Plaintiff remitted accordingly and the court entered up judgment in her favor for $3,000. From which defendant appealed, having duly excepted. It is as well to say here that on a former trial plaintiff had a verdict for $4,000, which was set aside and a second trial granted on the ground of alleged newly discovered evidence.

REYNOLDS, P. J. (after stating the facts.)—The case was submitted to the jury on proper instructions and every request preferred by defendant, of which there were six, was granted. It is only necessary to notice one or two of the points most strongly urged against the instructions. The jury were told that even though they believed plaintiff had tuberculosis or rheumatism in her right knee or in her system generally, or had a latent disease in her system, yet if they believed from the evidence she was injured in the manner described, that is to say, by a fall due to defendant's negligence, then defendant was responsible for the effects which naturally and necessarily followed the injury, if any, in the condition of health plaintiff was in, or in which her knee was at the time; and it was no defense that the knee was rendered more difficult to cure by reason of plaintiff's state of health; or that by reason of latent disease in her system her injuries were rendered more serious than they would have been if she had been in robust health. Several objections to that instruction are brought forward, but they all go to the proposition that it was outside the

evidence in the case. It is true plaintiff testified she was in sound health prior to the accident, but the instruction does not transcend the evidence, because much testimony was introduced by the City to prove she had rheumatism. It is said there was no evidence she had tuberculosis or any other latent disease except rheumatism, and that the instruction permitted the jury to speculate on her condition, and find she did have some other latent disease which was aggravated by the fall and resulted in a stiffened knee. This contention is hypercritical. The physicians testified tuberculosis or some other latent septic condition of the system might bring about anchylosis; and they testified, too, that if plaintiff had such a latent impairment of health, the fall in conjunction with it, might have led to anchylosis of the knee joint. The only specific disease the city attempted to prove plaintiff had was rheumatism; and hence the testimony of the physicians as to the possible cause of the anchylosis might have been confined to the question of whether rheumatism, or such a fall as plaintiff experienced, would produce it. But the expert testimony took a wider range, and in expounding the possible causes of anchylosis, the physicians mentioned tubercular and other septic conditions. Some testimony, and particularly that of plaintiff's mother, indicated that she never had been in robust health. Hence the instruction in question was within the pale of the evidence, and was a correct statement of the law; for though plaintiff's constitution may have had some pernicious but latent taint which the fall aggravated, thereby setting up a process of disease that developed into her present state, the city is answerable for the stiff knee, if the fall was due to its fault. [Neff v. Kansas City, 213 Mo. 350, 111 S. W. 1139.]

In the third paragraph of the instruction on the measure of damages, the court told the jury they might allow plaintiff the reasonable value of medical aid and attention which had been or might thereafter be rendered to her on account of her said injury. This charge was

within the averments of the petition that plaintiff had "paid and obligated herself to pay and will be compelled to pay in the future, large sums of money for medicine and medical and surgical services." Counsel for the city say it was outside the evidence, as there was no testimony plaintiff had bound herself to pay for past medical services, or that she would require medical or surgical attention in the future. Plaintiff was waited on by three physicians and the value of the services of only one of them was proved. The evidence does not show payment nor an express contract to pay either of the physicians. But it is correctly argued for plaintiff, that the law will imply an obligation to pay because the services were rendered, citing Gorham v. Railroad, 113 Mo. 408. It is also true that the implied obligation is, to pay only the reasonable value of the services. What this was remained unproved, except as to one of the three physicians who attended plaintiff, and he was not the one who attended her most frequently. Nevertheless in view of the enormous compulsory remission from the amount of the verdict, we will not hold this to be reversible error.

It is further said the court had no power to order plaintiff to remit part of the verdict because it was so excessive as to show such passion and prejudice on the part of the jury, as precluded a fair trial of the main issues. We do not agree to this view, nor do we suppose that the trial judge ordered a remittitur because he thought it the result of prejudice and passion. If he had, he would probably have set aside the verdict entirely. In our opinion the verdict was reasonable, provided the city is to be held liable for plaintiff's condition.

We might be inclined to criticise the action of the court in requiring any remittitur to be made on the facts in the case. This is the second trial before a jury, the first one, as before remarked, resulting in a verdict in her favor for $4,000. On the allegation of newly-dis-

covered evidence on the part of defendant, this was set aside and a new trial granted. This new trial resulted, as we have observed, in a verdict in her favor for $5,825, and the court, as the price of avoiding a new trial, required plaintiff to remit $2,825 of this amount. We are aware of the thoroughly established right in our State of the trial judge to control the amount of verdicts in these damage cases when, in their opinion, they are excessive, the Supreme Court itself even exercising this power in cases before it. But it seems to us in this case, where a person has been injured as seriously as this plaintiff, where she, a young woman between twenty-five and thirty years of age, is practically a helpless cripple for the rest of her life, if she was entitled to recover at all, the amount that the jury awarded her was not ex cessive. We cannot, however, interfere with that on this record, and in the position that the plaintiff herself, practically under coercion of the court, is in. That is to say she chose to accept a judgment for a lesser amount rather than incur the delay, expense and hazard of a new trial. That was her matter, and having elected to do so, of course she must abide by it. We do not hesitate to say, however, that the fact that the plaintiff's claim, as presented to us in the record, appears to us to be a very meritorious one, has had a very controlling influence with us in arriving at the determination which we have reached in the case. The jury might well find from the evidence plaintiff had been strong and healthy previously, that her weight had diminished from 156 to 119 pounds, that she was confined to the house for eight months and to her bed most of the time, suffered excruciating pain for a long time and still suffered, that she was a helpless and deformed cripple, and that all those consequences flowed from a fall due to the negligence of the city. We find no proof in the size of the verdict as returned, of passion or prejudice on the part of the jury, and as before said, cannot interfere on this record with the action of the court below, in ordering a remittitur as

the condition on which a new trial would be refused. [Chitty v. Railroad, 148 Mo. 64.]

We granted a motion for rehearing solely upon the doubt we had as to but one point in it, that doubt arising over the remark of the trial judge, made in overruling the objection to testimony. We held, on the authority of Thompson v. Ish, 99 Mo. 160, that this remark, while improper, was not reversible error. This point has been elaborately argued, both orally and by brief, and we now see no occasion, on full consideration, to alter the decision which we before reached in the case. We concede that the remark was an improper one, undoubtedly made by the very learned and experienced trial judge in the heat and hurry of the trial; but the question we are charged with determining is, whether, by reason of it, plaintiff should lose her verdict.

A physician called by defendant as a witness, had been examined in chief, and turned over to the plaintiff's counsel for cross-examination. That counsel asked him if it is not true that anchylosis is first caused by inflammation, and that anything that will produce a severe inflammation about the joint, might result in anchylosis, and that it might be the exciting cause that would finally result, with or without other aiding causes, in anchylosis. He answered all these in the affirmative. Counsel for plaintiff then asked him this question: "And there might be a slight injury or bruise of the knee which would cause inflammation, severe swelling, that might excite other causes and cause anchylosis, might it not?" Whereupon counsel for defendant interposed an objection to the question, "for the reason that the testimony is based upon the theory that this plaintiff weighed 156 pounds, was in sound health and limbs on the morning of this alleged accident and had been prior thereto." The court then made the remark which is the bone of this contention: "I am not strong on expert testimony, as you all know, and I don't believe in broadening its scope, but I will permit the question to be asked." De-

fendant duly excepted to the remark and to the overruling of the objection, and the question was answered by the witness at some length.

It will be noticed that plaintiff in no way contributed to this alleged error—in no way invoked it. On the contrary, her counsel was examining the witness on the presumption, as a fact proven in the case, that he was qualified to answer as an expert. Counsel for defendant were the objectors. While overruling the objection, the court clearly indicated by this remark, that he did not intend thereby to let in a long and confusing technical line of testimony.

At the instance of defendant the court gave the usual and approved instructions as to the credibility of witnesses—that is, that the jury are the sole judges of the credibility of the witnesses, of the weight of evidence and its relation to all facts—that it was their right to determine from the appearance and demeanor of witnesses on the stand which of them are more worthy of credibility and to give weight accordingly. The giving of this instruction was the deliberate direction of the judge to the jury, and was his final word to them on the weight of the credibility of the witnesses and the weight to be given to their testimony. We have a right to assume that, as intelligent men, they so understood it, and that if any wrong impression had been given by his casual remark, that this was removed by the court's final direction to them.

In the case of Thompson v. Ish, 99 Mo. 160, the trial was before a jury in a contest over a will, the issues being as to undue influence and whether the testatrix was of sound and disposing mind when she executed the will. The deposition of a physician was introduced by the defendant, the physician testifying he had remained at the residence of the deceased all night three or four days after the date of the will and it was his opinion the deceased was then perfectly sound mentally. Before offering the deposition, the defendants offered to prove

the reputation and standing of this physician. The trial judge held that to be unnecessary, saying that the witness' character and standing as an eminent physician, were part of the history of Missouri, and if courts and juries took notice of the facts of history, the evidence was immaterial. The Supreme Court condemned this remark as improper, but held it was not reversible error. In the Ish case the remark added to the weight of the particular expert's testimony. In this case, the remark under review, it is claimed, tended to weaken the effect of all the expert testimony in the present case, including that of one doctor who had testified for plaintiff and of three who had testified for the defense. If strengthening testimony by such a remark is not reversibe error, we are unable to see why weakening testimony by the opposite kind of a remark should be.

The latest case to which counsel for defendant call our attention, as in any way bearing upon this proposition, is that of Neff v. City of Cameron, 213 Mo. 350, l. c. 369. It is true that in that case the judge who wrote the opinion condemned remarks of counsel, which had gone unrebuked by the trial court, on the ground that they put into the jury's mind the personal view of the court, to weigh down the scales of justice, meaning, of course, that the personal view of the court was not to be brought to bear on the jury. That is a very different case from the one at bar; no such thing occurred here: no attempt, so far as appears in the record, was made by counsel on either side to urge the personal views of the court on the jury, and the remarks of the court in the case at bar had, considering the connection in which they were used, no such tendency as had the use made of them by counsel in the Neff case.

The remarks of the trial judge in State v. Musick, 101 Mo. 260, l. c. 273, strike us as far more objectionable than those made in this case or in the Ish case. But their utterance was held not reversible error. The same may be said as to State v. Duestrow, 137 Mo. 45, l. c.

87, and with much more force as to the remarks of the trial judge in State v. Findley, 101 Mo. 217, 1. c. 224. These were all criminal cases—where human life and liberty were at stake. In none of them were the remarks held reversible error.

We adhere to our previous ruling and affirm the judgment of the trial court. All concur.