JOY NEFF, by Next Friend, EDWIN NEFF, v. CITY OF CAMERON, Appellant.

**Division One, July 3, 1908.**

1. **STREET:· Due Care: Negligence.** Due care to discover and remedy defects in a sidewalk varies somewhat with the location of a street and the use it is put to—for instance, whether the adjoining blocks were sparsely or thickly settled.

2. **IMPUTED NEGLIGENCE: Differentiation.** In considering the subject of imputed negligence, it should be observed that there is a wide difference between the wilful injury by the parents to their little child, which, as an independent, intervening and proximate cause, resulted in the child's injury, and the mere negligent taking of their child to walk on a defective sidewalk where the child was injured by a loose board which flew up when her mother stepped upon it and injured the child.

3. ———: **Parent as Child's Agent.** The whole doctrine of imputed negligence has been thoroughly exploded. It was founded on the theory that the parent is the keeper and agent of a child of tender years. But that theory is unsound. The parent is the agent of the law, and not of the child. Negligence of the parent cannot be imputed to an infant where the infant sues in its own right for a wrong done to the child.

4. ———: **Elementary Principle.** It is elementary in the common law that one who has suffered wrong may have his amends, indemnity or reparation from anyone participating in that

wrong, whether the injured one be an adult or an infant, and anyone participating in or contributing to that wrong is responsible for the entire damage done.

5. **INSTRUCTION: Undue Prominence to Isolated Facts: Correcting Wrongful Argument.** In a suit by a two-year-old child for injuries resulting from her mother's stepping on a loose board on a sidewalk in a sparsely settled part of the defendant city, defendant's counsel, in the fervor of argument, insisted that, as plaintiff's parents knew the condition of the walk it was their duty to complain to the city, and exploited the absence of such complaint as a defense. Thereupon the court instructed the jury that even though the plaintiff's parents knew the sidewalk was not reasonably safe for travel thereon, that fact was no defense. *Held*, that, if no such argument had been made, the instruction might be bad as singling out and giving undue prominence to one or two facts, and as being argumentative in tone, but under the circumstances it was well enough.

6. ———: **Word in Different Senses: Injury.** A material word should not be used in two different senses in the same instruction, especially in the same clause; and if confusion may thereby be produced in the jurors' minds, the instruction becomes misleading, and is presumably erroneous. So that where the instruction, reduced to small verbiage, in effect told the jury that if the original injury to plaintiff's knee was aggravated by the development of resulting active tuberculosis (theretofore latent) then the defendant was responsible for the injury to the injury caused by and the proximate result of the injury, it is held that the uses of the word "injury" in an important instruction was so confusing as, under the circumstances, to require a new trial.

7. **EXCESSIVE VERDICT: Negligence Cases.** It is of the greatest concern that damages be kept within fairly conservative bounds in personal injury cases. Full compensation for injuries received through negligence is, in the abstract, impossible. Justice to the plaintiff means also justice to defendant. The award must not rest on sentimental or extravagant grounds.

8. ———: **$10,000.** A child two years old was walking along the street of a city of the third class, with her mother, who stepped on a board of the sidewalk, and it flew up and struck the child below the knee, causing a slight but painful bruise. The physician recommended a hot compress and rest. Thereafter she was treated by domestic remedies, such as compresses, liniments, etc. Within a few months radical bone trouble developed in the knee, and surgeons removed portions of the

diseased bone, performing operations at intervals. The leg is shortened, wasted, and deformed, but the evidence does not satisfactorily show that the injuries may not be so overcome by development and growth as to leave her some substantial use of her leg. *Held*, that a verdict for $10,000, while an unusually heavy one against a small town, is not so excessive as to require a reversal, were the trial scrupulously free from prejudicial incidents.

9. EVIDENCE: Admission: Statement of Plaintiff's Mother. Testimony by a witness that she heard the mother of plaintiff, a two-year-old child, who sues for injuries alleged to be due to a defective sidewalk, state that plaintiff fell off of a box and thereby received her injuries, is not competent on any theory, the mother being dead and having never testified. The mother not being a party to the suit, her admission did not bind the plaintiff child.

10. ———: ———: Of Next Friend: Impeachment. Admissions of plaintiff's next friend, to the effect that she fell off a box and thereby injured her leg, are not binding against her in a suit by her through him as next friend against the city for injuries caused by a board of a defective sidewalk flying up and hitting her leg. But if he gives testimony tending to show the child's injuries were due to the defendant city's negligence, his admissions may be used for purposes of impeachment.

11. ———: Newly Discovered: New Trial. Where defendant's counsel had been forewarned by the excluded testimony of a witness that it was family talk that plaintiff fell off of a box and was thereby injured and was not injured in the way alleged in the petition, but did not inquire of plaintiff's father, her next friend, while he was on the stand, whether he had made such statements, affidavits setting out that witnesses heard him make such statements and urging them, as newly-discovered evidence, as grounds for a new trial, do not show diligence.

12. REMARKS OF COUNSEL. Statements by plaintiff's counsel in his argument to the jury that a change of venue was not taken by plaintiff and that defendant denies its corporate existence, when such statments are not supported by the evidence, are unfair. And statements that, "Defendant thought they would drag us up here and put us to additional expense," and that, "You gentlemen have noticed that for the last few days defendant's attorney has been objecting and has been overruled," thereby implying that the court was on plaintiff's side, are prejudicial. And if the court, upon objection, declined to stamp its seal of disapproval upon such line of argument, or by remarks seemed to lend its approval to the

hurtful statements, it cannot be said that an unusually large verdict for plaintiff was not swollen by these prejudicial incidents.

Appeal from Andrew Circuit Court.—*Hon. A. D. Burnes,* Judge.

REVERSED AND REMANDED.

*F. B. Ellis, J. A. Clark* and *J. A. Saunders* for appellant.

(1) All persons must use ordinary care in going over a sidewalk. This applies to the parents as well as to children when the child is being guarded by the parent. The city of Cameron was only required to keep its sidewalks in a reasonably safe condition for persons whom they might reasonably expect would use such walk. They are not insurers against accident to children, no more than they are to adults. If parents knowingly permit their children to play in a dangerous place, or knowingly lead them in a careless manner, and the child is injured by the wilful conduct of the parent or its negligence, it cannot recover. Cannevant v. Stuyvesant, 33 N. Y. Supp. 53; Reed v. Railroad, 27 N. W. 77; 1 Thompson on Negligence, secs. 300, 316; Gunn v. Chicago, 97 Ill. 66; Stilson v. Railroad, 67 Mo. 671. The city was not an insurer against accidents to children such as this, and an instruction which eliminated this proposition is error, and should not have been given. Nixon v. Railroad, 141 Mo. 425; Heberling v. Warrensburg, 204 Mo. 604; Railroad v. Devore, 52 U. S. App. 77; Towers v. Railroad, 58 S. W. 439. (2) The verdict is absolutely excessive, and is not the result of cool deliberation of a jury. This child was only two years old. The damage to its health was speculative; it was only made lame by this injury, and the injury at first only slight. This child is incapable of earning anything until, say, it is fourteen years

213 Sup—23

of age, and then its earnings go to the father and not to the child until eighteen. Chitty v. Railroad, 166 Mo. 443; Nichols v. Plate Glass Co., 126 Mo. 55; Adams v. Railroad, 100 Mo. 555; Devoy v. Railroad, 192 Mo. 221. (3) The argument of counsel for respondent was improper, and calculated to mislead and create a prejudice against appellant, which argument was duly objected to and excepted to by appellant. McDougal v. Cash, 45 Mo. App. 66; Massengale v. Rice, 94 Mo. App. 430.

*Pross T. Cross* and *R. H. Musser* for respondent.

(1) 1. The negligence of the parent cannot be imputed to the child. Boland v. Railroad, 36 Mo. 484; Winters v. Railroad, 99 Mo. 509; Brill v. Eddy, 115 Mo. 596; Profit v. Railroad, 91 Mo. App. 369; Robinson v. Cone, 22 Vt. 213; Whirley v. Whitman, 1 Head 610; Birge v. Gardiner, 19 Conn. 507; Railroad v. Hanlon, 53 Ala. 82; Railroad v. Mahoney, 57 Pa. St. 187; Roanoke v. Shull, 97 Va. 419; Railroad v. Manson, 30 Ohio St. 470; Railroad v. Groseclose, 88 Va. 267; Bottoms v. Railroad, 114 N. C. 699; Railroad v. Gravitt, 93 Ga. 369; Bamberger v. Railroad, 95 Tenn. 18; Westbrooke v. Railroad, 66 Miss. 560; Wymore v. Mahaska County, 78 Ia. 396; Ives v. Weldon, 114 Ia. 476; Bradshaw v. Frazier, 113 Ia. 579; Western Union Tel. Co. v. Hoffman, 80 Tex. 420; Evansville v. Senhenn, 151 Ind. 42; Railroad v. Eadie, 43 Ohio 98; Railroad v. Wilcox, 138 Ill. 370; Railroad v. Kowalski, 92 Fed. 310; Jacksonville Electric Co. v. Adams (Fla.), 39 So. 183; Railroad v. Herrklotz, 104 Ky. 400; Railroad v. Young, 57 Kan. 168; Shippy v. Au Sable, 85 Mich. 280; Huff v. Ames, 16 Neb. 139; Carney v. Railroad, 72 N. H. 364; Railroad v. Schuster, 113 Pa. St. 412; Eskildsen v. Seattle, 29 Wash. 583; Dicken v. Salt Co., 41 W. Va. 511. 2. Negligence on the part of plaintiff's parents would be a defense in this case only in the event that such parents' negligence was the sole cause of the injury, and

that the negligence of defendant in keeping the walk in a dangerous condition did not in any degree proximately contribute to produce such injury. Defendant's negligence was the proximate cause of the injury. Vogelgesang v. St. Louis, 139 Mo. 127; Hull v. Kansas City, 54 Mo. 598; Bassett v. St. Joseph, 53 Mo. 290; Benjamin v. Railroad, 133 Mo. 274; Vogel v. City of West Plains, 73 Mo. App. 588. 3. Defendant further contends that instruction II was error on account of singling out issues not submitted and as a comment on evidence. But we submit that if the instruction was correct as a proposition of law, it was properly given, since defendant's answer sought to and did make an issue before the jury as to the responsibility of this infant for its parents' negligence. (2) Plaintiff cannot be held responsible for the negligence of either parent or physician in the treatment of her injury, or for a subsequent injury which aggravates the first, but in either case it becomes the result of the first injury. Elliot v. Kansas City, 174 Mo. 554; Conner v. Nevada, 188 Mo. 161. (3) The verdict is not excessive. This child is not only crippled and deformed for the rest of her life, but she will suffer great pain in the future, and, as shown by the doctors, in all probability the trouble will break out anew, and require more operations and probably amputation of the limb. In actions for personal injuries it is the policy of the law to leave the determination of the damages to the judgment of the individual jurors, and not to interfere, unless it is manifest that the verdict is the result of passion or prejudice. And this rule will be adhered to even though the award of the jury may seem large. Hanlon v. Railroad, 104 Mo. 381; Dimmett v. Railroad, 40 Mo. App. 654. And the fact that such injury cannot be measured by a definite money standard should make courts cautious, in such cases, in disturbing verdicts because excessive. Wills v. Railroad, 44 Mo. App. 51.

LAMM, J.—In an action for $25,000 damages grounded on negligence, plaintiff recovered $10,000, and defendant city appeals.

Cameron is a city of the third class with a north-and-south street named Orange. On the east side of Orange was a four-foot wooden sidewalk made of stringers laid lengthwise and boards nailed crosswise. On April 15, 1903, Joy Neff was about two years old. On that day, according to plaintiff's evidence, while led by her mother, she was walking on this sidewalk. The mother stepped on a loose board. It flew up and struck her on the left leg just below the knee-cap, causing (apparently) a slight but painful bruise. The child suffering, that evening a doctor was called who recommended a hot compress and rest. She received no more personal medical or surgical attention for several months, but her leg was treated by domestic remedies, compresses, liniments, etc., and she did not do well. She was kept in bed, and, when up, limped and complained. Eventually, in the course of some months, radical bone trouble developed in her knee. Surgeons were called and more than one surgical operation was performed at intervals, removing portions of diseased bone.

On the 17th of December, 1904, she brought suit by her father as next friend, her petition alleging she was unable to use her left leg, will be a cripple for her natural life, that her ability to earn a livelihood was permanently destroyed, that her general health and nervous system were permanently injured, her leg was shrunken and wasted away, etc., and she was disfigured for life. That said sidewalk, at the point and time in question, had been allowed through defendant's negligence to become old and rotten, the nails rusted and broken, the boards loose from the stringers, etc. That such dangerous conditions were long known to the city or would have been known by the exercise of reasonable

care, but were negligently allowed to remain after the city had time to do repairs, etc.

The answer admits defendant is a city of the third class and puts in issue the other averments of the petition. It next invokes the doctrine of "imputed negligence" as a defense, alleging that if the child was injured it was not on account of defendant's fault, but on account of the negligence of her parents who had charge of her at the time and who permitted her to walk upon the sidewalk, which sidewalk could not be made reasonably safe for a child of so tender years to walk upon with reasonable safety. By way of further defense, it avers that if the child was injured at all it was only slightly injured. That, if the injury afterwards became permanent and serious, it was on account of want of proper treatment by the parents and attending physicians. That the child being incompetent to care for herself, the parents failed to properly care for her or to furnish her competent medical and surgical attendance. In short, that the after-complications arose from the negligence of the parents to the child and of the physician in failing to attend her and give her due surgical treatment after he knew of the character of her injury.

The case was taken on defendant's application to Andrew county by a change of venue, where it was tried with the aid of a jury, resulting in the aforesaid verdict.

At the trial it was contended that Orange street was not a public thoroughfare of the city of Cameron. The testimony took a wide range on that issue; for instance: Whether it had ever been platted as a street. Again, whether it was a *de facto* street through dedication, acceptance, etc. The clear weight of the testimony was that it had not only been platted, but that it had been improved and treated as a public street of Cameron in charge of the street commissioner. Public work had been done on it from year to year and it was

in use as a public street for a long time before the accident. So, too, the sidewalk in question had been there for several years, and the city had assumed jurisdiction to cause it to be repaired when occasion called and to reconstruct it. True, on one side of the street for a half dozen blocks there were not many houses and that section of Cameron was shown to be sparcely settled, but that phase of the matter only went to show due care to discover and remedy defects. It being manifest that what is due care somewhat shifts with the locality of the street and the use it is put to. On the issue of street or no street, plaintiff made a good case.

Evidence was put in pro and con on the condition of the sidewalk. The details of it are useless for appellate purposes. A case for the jury on the issue of defendant negligently allowing a defective sidewalk to remain for some months before the accident, was made out so strongly that the merits are with the plaintiff on that issue. It was clearly for the jury and that phase of the case needs no further attention.

Any other material facts essential to the determination of questions made on appeal will appear in connection with the consideration of such questions.

Here, error is assigned:

(1) In refusing certain instructions; (2) in giving certain instructions; (3) because the verdict is excessive and can only be ascribed to passion and prejudice; (4) because plaintiff was allowed to introduce a plat of the town of Cameron in evidence (this assignment seems abandoned in defendant's brief); (5) in excluding the declarations and admissions of the child's parent as to how she was injured; (6) finally, that one of plaintiff's learned counsel made prejudicial remarks in his argument to the jury.

I. Defendant asked and was refused instructions lettered A to H inclusive. Instruction A was a command to the jury to find for the defendant. The only

theory, if any, on which it was allowable was that of "imputed negligence," exploited in the answer.

Instructions B to H inclusive carefully and elaborately put phases of that doctrine to the jury. Instruction A may therefore be considered with the others.

In brief and in printed as well as oral argument here, defendant's counsel insist that the negligence of the parents of the child in taking her upon the sidewalk with knowledge of its defects and in not caring properly for her injuries must be imputed to the child or must be taken as the approximate cause of the serious character and permanency of her injury and, hence, is a good defense.

In the evolution of their argument things are said which might be applicable to a case in which the parents had willfully wronged their child in such sort that their willful and intentional act was an independent, intervening, proximate and sole cause of her present condition. To avoid misunderstanding it is better to state that what we shall say hereafter is not applicable to such a case and what counsel have said on that score is inapplicable to the case at bar. There is no such case here on the facts.

What the plaintiff's parents did in this case, at worst, was to negligently take their child to walk on a defective sidewalk. The proof had no tendency to show that they had the intention of injuring it in the sense of committing a willful wrong against it. As to their negligence in treating the child or in providing medical attention, the same may be said. As inferentially shown they were miserably poor and misfortune pursued them. The father was a cripple and the mother incurably ill with consumption. Under the proof the child itself seems a waif, a leaf tossed to and fro by the winds of adversity. Doubtless they did the best within their knowledge and power, and the testimony

from expert men of science (with which the record
abounds) does not show that medical skill would have
averted the conditions subsequently developing in her
knee. The case is simply one where the negligence of
the parent is attempted to be imputed to the child as a
bar to her recovery. The attempt of learned counsel in
effect, then, is to incorporate into the law of the land,
as legal precepts, the sayings that the sins of fathers
are visited upon their children (Westbrook v. Railroad,
66 Miss. l. c. 569), and that the child's teeth must be
set on edge because the father has eaten sour grapes.
[Railroad v. Snyder, 18 Ohio St. l. c. 409]. But the
whole doctrine of imputed negligence has been as thor-
oughly exploded as any heresy ever was. It was origi-
nally founded on (what, for want of a better expression,
we may call) a *fiction of the law* that the one in whose
care the infant is, is its keeper and agent and, in re-
spect to third persons, "His act must be deemed that
of the infant, his negligence the infant's negligence."
But the theory of agency is flatly unsound. The cus-
todian of an infant is the agent of the *law,* and not the
agent of the infant. It is elementary in the common
law that the one who has suffered wrong may have his
amends, indemnity or reparation from any one partici-
pating in that wrong. [Bragg v. Railroad, 192 Mo. l. c.
359, *et seq.*] Thus, if A and B wrong C, C may re-
cover his damages from either A or B or from both.
As put by Bishop (Bishop on Non-Contract Law, sec.
573), "A person who has done any part of a wrong
working harm to another, or even contributed his will
to it, is responsible to him in damages for the entire
harm, however many · other individuals, forces, and
things may have co-operated in bringing about the mis-
chief."

Of the doctrine of imputed negligence, that author
incisively says (Sec. 582, *Id.*): "Now, this new doc-
trine of imputed negligence, whereby the minor loses

his suit, not only where he is negligent himself, but where his father, grandmother, or mother's maid is negligent, is as flatly in conflict with the established system of the common law as anything possible to be suggested. The law never took away a child's property because its father was poor or shiftless or a scoundrel, or because anybody who could be made to respond to a suit for damages was a negligent custodian of it. But, by the new doctrine, after a child has suffered damages, which, confessedly, are as much his own as an estate conferred upon him by gift, and which he is entitled to obtain out of any one of several defendants who may have contributed to them, he cannot have them if his father, grandmother, or mother's maid happens to be the one making a contribution. In these and other respects, it is submitted, the established principles stated in a preceding section [Sec. 573, *supra*] are conclusive of the proposition that the doctrine now in contemplation does not belong to the common law.''

Referring to Hartfield v. Roper, 21 Wend. 615 (the parent case in United States holding to the theory of imputed negligence) and to the English doctrine on that behalf, Beach says (Beach on Con. Neg. (3 Ed.), sec. 127): ''The rule of imputed negligence, as applied to persons *non sui juris,* is an anomaly. The English law on this point presents an extraordinary illustration. On the one hand it is held that the negligence of a person having charge of a child is the negligence of the child, and imputable to it, when the child comes into a court of justice and asks damages for an injury negligently inflicted upon it by the defendant. But, *per contra,* when a donkey is carelessly run down in the highway, where he is negligently exposed, the defendant is held liable, and though oysters are negligently placed in a river-bed, it is an injury redressible at law in damages for a vessel negligently to disturb them. It appears, therefore, that the child, were he an

ass or an oyster, would secure a protection which is denied him as a human being of tender years, in such jurisdictions as enforce the English or the New York rule in this respect."

In at least three states where the doctrine of Hartfield v. Roper, *supra,* was once followed, Indiana, Minnesota, and Illinois, it is now repudiated. [City of Evansville v. Senhenn, 151 Ind. 42; Mattson v. Railroad, 95 Minn. 477; Railroad v. Wilcox, 138 Ill. 370.]

The leading case on the opposite theory is Robinson v. Cone, 22 Vt. 213, REDFIELD, J., speaking for that court. That case is followed generally throughout the United States, as shown by the brief of plaintiff's counsel.

Nearly half a century ago this court in a case argued by eminent counsel chose to follow the lead of Robinson v. Cone. Referring to Hartfield v. Roper, WAGNER, J., says in Boland v. Railroad, 36 Mo. l. c. 490: "The reasoning of the learned judge (COWEN, J.) on infantile responsibility is certainly harsh and repugnant to justice. We think the doctrine enunciated by Judge REDFIELD much more sound and in entire consonance with justice and reason." In the case of Stillson v. Railroad, 67 Mo. 671, there are observations made which defendant's counsel rely on in the case at bar as supporting their view. But the Stillson case was reviewed in Winters v. Railroad, 99 Mo. 509. High respect for Judge NAPTON—a respect bottomed on his signal and fruitful labors on this bench embalmed in the pages of our reports and upon the consensus of the opinions of his contemporaries, coming down to us as a cherished tradition of the Bar of Missouri—caused his observations on the doctrine of imputed negligence to be treated with great tenderness in the Winters case. But enough was said there to show that this court re-announced the doctrine of the Boland case, and distinguished the Stillson case, holding in effect

that what was said on the question of imputed negligence was not necessary to a decision and, therefore, became *obiter*. Such was the view of ELLISON, J., in a well-reasoned case, Profit v. Railroad, 91 Mo. App. l. c. 376, *et seq.*

The Stillson case is put somewhat on the doctrine of Railroad v. Stratton, 78 Ill. 88. Learned counsel for plaintiff point out that the authority of Railroad v. Stratton is much shaken, if not overturned, in a later case in the Supreme Court of Illinois—the Wilcox case, *supra*. It is not too strongly put, to say that the doctrine of this court is settled that negligence of the parent cannot be imputed to an infant where the infant sues in its own right for a wrong done. [Brill v. Eddy, 115 Mo. l. c. 606; Stotler v. Railroad, 200 Mo. l. c. 143, *et seq.*] If the parent sues in his own right, a radically different situation is presented.

The instructions were properly refused and the point is ruled against defendant.

II. Error is assigned in the giving of instructions. None but two need attention. During the hotfoot and fervor of the argument, defendant's counsel (as we gather) took the position that, as the parents of plaintiff knew the condition of the walk, it was their duty to complain to the city. We infer from the scant record that the absence of such complaint was exploited as a defense. At this point, the court, to parry the force of that line of argument, gave the following: "The court instructs the jury that even though they may find from the evidence that the father or mother of plaintiff knew that the sidewalk in question was not reasonably safe for travel thereon, if you find it was so at the time they went thereon with plaintiff, yet that fact is no defense in this case." Under the circumstances, we deem that instruction not reversible error. The fact pointed out was no defense under the facts here. If no such argument had been made, the in-

struction might be bad in singling out and giving undue prominence to one or two facts, and as being argumentative in tone. But considering the occasion of it and the office it was intended to fill, it was well enough.

Plaintiff asked and was given the following:

"The court instructs the jury that if they find for the plaintiff under instruction numbered one, given on her behalf, and that she was injured as therein stated, and if you believe from the evidence that at the time she received such injury she had a tubercular tendency or had latent tuberculosis in her system, and that said injury caused said tubercular tendency, or latent tuberculosis, to develop in and become active in her injured leg or knee, and that the development of said latent tuberculosis or tubercular tendency was the natural and proximate result of said injury and thereby aggravated said injury to her left knee and leg, then defendant is responsible for any injury or damage arising or accruing to plaintiff on account of such tubercular development so caused by and the natural and proximate result of such injury."

Some of the expert testimony tends to show that the present grave conditions of the child's knee was caused by the active development of tuberculosis. Some of the doctors were of the opinion that there was a latent tendency to tuberculosis in the knee before the blow, which sprang into pernicious life and activity through it. Some of them said that tuberculosis is not hereditary, but that one person gets it from another through "contagion." One of the said doctors did not know whether the one theory or the other is true and would like to know. One testified to his mind there was no present tubercular condition. There is a unanimity of opinion to the effect that whether there was a latent disease in the knee before the blow and resulting original injury, or not, yet that its present serious

condition would naturally result from a blow or a lick, which injured the outside covering of the bone.

In this condition of the proof, plaintiff was entitled to an instruction on the theory that if tuberculosis was latent in the knee prior to the lick, and the lick received from the board directly caused it to become active and that activity, in natural and reasonable sequence, produced the inflammation, diseased bone, and stiff and crippled condition, if any, disclosed by the proof, then plaintiff was entitled to recover for such aggravation of the latent tubercular tendency as naturally and solely resulted to the knee from the blow. If, on the other hand, that aggravation was solely caused by something independent of the blow and original injury and which (as a new and independent cause), intervened after the blow, then the above rule of law self-evidently ought not to apply, and plaintiff could not enhance her damages by the aggravation. Now, the instruction in question is not drawn with clearness and precision. It uses the word "injury" in several senses. It is first used several times in the sense of the original harm to the knee by the lick of the board. But subsequently the same word is used as meaning the aggravation of the original injury—the latter part of the instruction reading: "And thereby aggravated said injury to her left knee and leg, then defendant is responsible for any *injury* or damage arising or accruing to plaintiff on account of such tubercular development so caused by and the natural and proximate result of such *injury*."

The primary office of an instruction is to lay down to the plain men in the box, who use plain fireside language in reasoning, a plain rule of law to guide them in arriving at a just result on the facts they find to exist. Jurymen are not skilled in differentiating the use of the same vital word in different senses in the same instruction; though such word may be properly used and properly understood in different senses by

minds drilled in etymology. The instruction in hand covers the very heart of the case. It should therefore have been drawn with precision, so that it would throw out a full and clear, not a confused or misleading, light. Stripped of mere large verbiage, it in effect told the jury that if the original injury to her knee was aggravated by the development of resulting acting tuberculosis (theretofore latent) then defendant was responsible for the injury to the injury caused by and the proximate result of the injury. We may only guess what effect that singular pronouncement had on the jury's mind in producing their anxious verdict. It may have been bad—presumably was. We think, on this record, it was error to give it.

At another trial this instruction should be redrafted so as to clearly announce the correct rule of law—by using any material word in only one allowable sense.

III. Is the verdict so excessive as to indicate passion and prejudice in the jury? Error is assigned in that behalf. Absent elements of evil intent and malice, as here, the verdict challenges judicial solicitude and scrutiny as an unusually heavy one against a small town for injuries to a child's leg not resulting in amputation, and which (while grave) the testimony does not satisfactorily show may not be so far overcome by her growth and development as to leave her some substantial use of her limb, and which the testimony does not show will with reasonable certainty entirely destroy her earning capacity when she becomes an adult.

Our statutes put a modest and conservative limit on liability for a death loss; and, whatever may be the rule in other jurisdictions, this court has always deemed it of the gravest concern that damages should be kept within fairly conservative bounds in personal injury cases. Full compensation for injuries received through negligence is impossible, in the abstract. The

best courts can do is to see to it that results attained do not shock the judicial conscience. Justice to the plaintiff must be tempered with—nay, means—*justice* to defendant as well. The burden of such judgments ultimately rests upon innocent taxpayers. So that, while the law renders its indemnity and amends to the injured plaintiff, it does so in a reasonable and not in a sentimental or extravagant way.

In a trial scrupulously free from prejudicial incidents, we are not going to say the verdict, large as it is, might not stand. But, as pointed out in another paragraph of this opinion, the trial was not free from such incidents—incidents that may well have inflamed the jury, hurried it beyond the point of fairness and left their mark in a swollen verdict—incidents constraining us to be of mind the verdict is excessive.

IV. At the trial, a witness for defendant, Mrs. Hull, was on the stand. Asked if she knew how Joy got hurt, she said she did. Asked how, she replied, "Fell off a box. Q. Fell off a box? A. Yes, sir." Inquired of by the court whether she saw that, she answered, "No, sir." At this point the court sustained a motion to strike out that testimony from the record. The jury was then excused, and, while out, it was ascertained from the witness that the child's mother told her she fell off a box and hurt herself. On that disclosure being made, defendant's attorney, Mr. Ellis, asked the court to rule that the statement of the mother to that effect was competent. The court declined to so rule and counsel saved an exception. The jury came in and the witness proceeded with her testimony, barring the excluded statement of the mother. The court also instructed the jury there was no evidence plaintiff fell off of a box and hurt herself. That the testimony of Mrs. Hull relating thereto had been stricken out and must be disregarded. Here, it is contended that error was committed in excluding that statement.

The mother, some months after Joy's injury, died of consumption. On this record there is no soundness in the assignment. The mother not being a party to the suit, her admission did not bind her child; and under no known legal principle was it admissible in evidence.

In this connection, we may as well dispose of a question raised in the motion for a new trial. That motion alleges defendant has discovered new testimony, unknown to it at the trial, to-wit, that Edwin Neff (the child's father and next friend), told divers persons in the city of Cameron a short time after the accident is said to have taken place that his little girl fell off of a box and hurt herself. Supplementing that allegation in the motion, was the affidavit of one Albert Stucker who deposed that he worked with Neff as a painter during the spring and summer of 1903, and during that time Neff told affiant Joy fell off a box and hurt her knee.

Observe there is no diligence shown. Therefore, however material the testimony, the motion 'for a new trial could not have been sustained, absent such showing. Not only so, but Neff's statement was not admissible as that of a party to the suit. For some purposes a next friend may bind the plaintiff by his conduct in court. But he is no such agent of the plaintiff as would make his prior statements admissible on the merits of the case against his ward. In this instance, however, Neff was a witness. His deposition was taken and read. He testified he was present at the time Joy was hurt by her mother's stepping on a loose sidewalk board. In fine, his testimony tended strongly to show liability on the part of the city. Afterwards during the course of the trial, he was produced in person upon the stand by plaintiff and tendered as a witness for the purpose of cross-examination by defendant's counsel. Any admission of his that his child fell off the

box and hurt her knee was of vital significance by way of impeaching his testimony read to the jury from his deposition foisting liability on defendant by a lick from a board negligently left loose in a sidewalk. But counsel declined to cross-examine him. The testimony of Mrs. Hull had forewarned them of the family talk that the child was injured by falling off a box. Why they did not sift his conscience or cross-examine him to lay the foundation for his possible impeachment we may only guess. The premises considered, we see no error in the ruling of the court on the motion for a new trial because of newly-discovered evidence.

At another trial the city, if it so desires, can put itself in a situation to be legally entitled to impeach Neff's testimony if the same is used to get another verdict.

V. Finally, error is assigned on prejudicial remarks made by counsel for plaintiff in their closing argument to the jury. Plaintiff's counsel in their brief say we should not consider these remarks because the attention of the trial court was not called to them in the motion for new trial. But we do not read the motion in that way. It is not as specific and full as it should have been, but it does call the court's attention to error of the character indicated in broad language as definite as has been held sufficient in such motions in directing attention to error in ruling on admissions or exclusions of testimony, or in giving or refusing instructions.

The record shows that, *arguendo,* one of plaintiff's learned counsel used the following language to the jury: "The plaintiff didn't bring this case to Andrew county." Again: "They deny that the city of Cameron is a city of the third class." Again: "You gentlemen notice that for the last few days Mr. Ellis has been objecting and has been overruled." Again: "They

thought they would drag us up here and put us to additional expense." These remarks were severally objected to. The court made only the ruling hereinafter indicated. As to the remark that, "The plaintiff didn't bring this case to Andrew county," the court said: "That is the record and you gentlemen introduced it yourselves yesterday by putting Mr. Musser on the stand to prove the papers in this case." As to the remarks, "They deny that the city of Cameron is a city of the third class," the ruling of the court was: "The answer is in evidence."

Now, the trial answer, and the only one in the record, shows that defendant admitted it was a city of the third class. Counsel had no right to throw an aspersion on the good faith of the city's defense, by stating it denied its very corporate existence. The jury may or may not have recalled the verbiage of the answer. It was the duty of the court to have corrected counsel in no uncertain way.

For some purpose, we cannot clearly make out, one of plaintiff's counsel was called as a witness for defendant. He was handed a bundle of papers and asked, in substance: What are those papers? He answered: "These are the original papers." He then proceeded without further question to make an inventory by enumerating, thus: "Here is the petition, the defendant's answer, subpoenaes, application for change of venue by defendant"—At this point he was interrupted and did not finish his voluntary inventory. Asked why he got those papers and brought them, his answer was: "Yes, we brought over the answer filed by you gentlemen denying Cameron was a city of the third class and everything alleged in that petition."

The application for a change of venue was not read to the jury. No answer was read to them showing that defendant denied it was a city of the third class. It is on such a record that the court permitted counsel

to say that plaintiff had not taken the case to Andrew county for trial. In strictness, the testimony (not responsive to the question) did not show that. It merely showed that defendant had taken a change of venue. There might have been more changes of venue than one. But, on broader grounds, we do not choose to shut our eyes to the purpose and danger of that line of argument. It could have no result except to prejudice the jury and the court should have instantly stamped the seal of its disapproval upon it. The same may be said of the remark: "You gentlemen notice that for the last few days Mr. Ellis has been objecting and has been overruled." What, may we ask, did that mean except this: "You notice, gentlemen of the jury, that Ellis is wrong in the way he is trying this case. You see, gentlemen, we have the court with us, and that makes the path of duty plain to you." That was a mischievously unfair argument and the court in its own dignity and right should have stopped counsel even though no objection was made. Suppose learned counsel had told the jury that the court was favorable to plaintiff's view of the case and thus have put into the jury's mind the personal views of the court to weigh down the scales of justice against defendant city? Would that not be a reproach of the law? Yet how much less harm was it to call the attention of the triers of fact away from the facts and fasten it upon the rulings of the court with which they had no concern? Counsel had odds enough in their favor. A little child, to whom the honest human heart goes out in sympathy, a permanently crippled knee resulting from the proved negligence of the town, was this not enough inducement to a play of forensic eloquence striking every chord of sentiment in a juryman's breast, without projecting the personality of the learned judge on the bench into the controversy? In Wojtylak v. Coal Co., 188 Mo. l. c. 285, *et seq.*, it was said that

incidents of like character appeal strongly to judicial discretion. In Bragg v. Railroad, 192 Mo. l. c. 366, it was said: "It cannot be denied that in the everyday administration of the law through the courts, enough *flotsam* and *jetsam* may be lodged in the current of a trial to turn the stream of justice awry."

But we have pursued the matter far. In our opinion, the interest of exalted and refined justice will be well subserved by reversing and remanding this case for a new trial. It is so ordered.

All concur, except *Valliant, P. J.,* absent.