MARY ROSS, Respondent, v. ROLLA WELLS, Receiver of UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

St. Louis Court of Appeals. Opinion Filed June 22, 1923.

1. NEGLIGENCE: Imputed Negligence: Husband's Negligence Driving Automobile Not Imputed to Wife. A husband's negligence, if any, in driving an automobile on a street railroad crossing, is not imputed to the wife who was sitting in the back seat and had nothing to do with the operating of her husband's automobile.

2. ———: Street Railroads: Guest in Vehicle Crossing Tracks: Care Required. An occupant of a vehicle having the status of a guest therein is not under all circumstances entitled to entrust his safe-

ty wholly to the driver of the vehicle and omit to take any precautions whatsoever for his own safety.

3. **STREET RAILROADS:** Negligence: Husband Driving Automobile: Collision: Wife in Rear Seat Injured: Evidence: Wife not Guilty of Contributory Negligence as a Matter of Law. In an action for personal injuries sustained by plaintiff by reason of a collision between an automobile driven by her husband in which she was riding, and a street-car operated by defendant, in view of the fact that plaintiff was seated in the rear seat of the automobile; that her husband was an experienced and careful driver; and that upon approaching the street-car tracks he slackened the speed of the automobile to two or three miles per hour, or so it was barely moving; thus indicating to a reasonable mind that he was proceeding with due caution, *held* that plaintiff should not be denied a recovery, as being conclusively guilty of contributory negligence, in failing to look in the direction from which the car was approaching.

Appeal from the Circuit Court of the City of St. Louis.— *Hon. Wilson A. Taylor,* Judge.

AFFIRMED.

*Charles W. Bates, T. E. Francis and G. T. Priest* for appellant.

The court below should have sustained defendant's demurrer to the evidence offered at the close of plaintiff's evidence in chief and again at the close of the whole case, on the ground that the evidence conclusively shows that plaintiff was guilty of contributory negligence in permitting herself to be driven upon street car tracks immediately in front of a moving car, without looking or listening for the same, when, by looking and listening, she could have seen and heard the street car in time to have warned the driver to refrain from going on the tracks and thus have averted a collision. Fechley v. Railroad, 119 Mo. App. 358; Leapard v. Kansas City, 214 S. W. 268; Friedman v. United Rys. Co., 238 S. W. 1074; Burton v. Pryor, 198 S. W. 1117; State ex rel. Hynes v. Bland, 237 S. W. 1018; Sorrell v. Payne, 247 S. W. 462; Kelsay v. Railroad, 129 Mo. 362; Hall

v. United Rys. Co., 152 Mo. App. 577; Zeis v. Railroad, 217 S. W. 324; Van Cleve v. Railroad, 181 S. E. 1084; Costello v. Railroad, 238 Mo. 33; Evans v. Railroad, 233 S. W. 399.

*McMahon & Berthold* and *Oliver Blackinton* for respondent.

The evidence fully justified the court in allowing the case to go to the jury, and in overruling a demurrer to the evidence. Solomon v. Duncan, 185 S. W. 1141, 194 Mo. App. 517; Neahring v. Monroe Stationery Co., 191 S. W. 1054; Barton v. Louisville & Nashville R. Co., 196 S. W. 379; Turnbow v. Dunham, 197 S. W. 103, 272 Mo. 53; Crecelius v. Chicago, M. & S. P. Ry. Co., 205 S. W. 181, 247 Mo. 671; Briscoe v. Chicago & Alton R. Co., 208 S. W. 885, 200 Mo. App. 691.

ALLEN, P. J.—This is an action for personal injuries sustained by plaintiff by reason of a collision between an automobile in which she was riding and a street car operated by the defendant. There are several assignments of negligence in the petition, one of them charging that plaintiff's injuries were caused by the negligence of defendant in operating its street car at a rate of speed in excess of fifteen miles per hour, in violation of a certain ordinance of the city of St. Louis. The answer is a general denial coupled with a plea of contributory negligence on the part of plaintiff.

The trial below, before the court and a jury, resulted in a verdict and judgment for plaintiff in the sum of $750, and the defendant appeals.

The casualty occurred on August 12, 1920, at about five o'clock, P. M., at the intersection of Kingshighway boulevard and St. Louis avenue, public streets in the city of St. Louis. Kingshighway extends north and south and is intersected by St. Louis avenue, extending east and west. Plaintiff was riding in her husband's automobile, driven by the husband who sat at the wheel, in the front seat thereof. Plaintiff and her daughter sat in the rear

seat, plaintiff sitting on the right side of the automobile. Kingshighway is a wide boulevard, the two travelled portions of the street being separated by a grass plot or parkway in the center thereof. The exact width of the entire street is not shown, but there is testimony that it is about ninety feet wide. On St. Louis avenue; crossing Kingshighway, the defendant maintained double street car tracks; westbound cars being operated on the north track and eastbound cars on the south track. The automobile in which plaintiff was riding, while proceeding south on the west side of Kingshighway, crossing, or proceedng to cross, defendant's tracks, came into collision with a westbound car of defendant which was proceeding west on the north track at this crossing, whereby plaintiff sustained the injuries for which she sues.

Plaintiff testified that in approaching St. Louis avenue the speed of the automobile was not in excess of ten or eleven miles per hour and was slackened to two or three miles per hour at or about the north line of St. Louis avenue. Her testimony in this connection is as follows:

"Q. Now, tell this jury then how fast your husband's car was traveling as it approached St. Louis avenue? A. Well, I know how fast the car runs; I have been riding in it; but I wasn't in front of the speedometer to see it, but I know it wasn't going more than ten or eleven miles an hour. And when we got to the corner he slowed up to about two or three miles; and he always slows up at a corner anyway. Q. I didn't catch the speed of the car at St. Louis avenue. A. It couldn't be more than two or three miles."

Plaintiff further testified that she observed a street car standing on the west side of Kingshighway, headed east, which car remained stationary until after the collision; but did not look to the east at that time. She was asked, on direct examination: "Did you look eastwardly on St. Louis avenue?" And she answered: "No, sir, I didn't think to look that way." She said that her husband continued southwardly, crossing the street car

5—211 M. A.

tracks, and that he was crossing the north or westbound track when the automobile was struck by the westbound car; that the front part of the automobile had just crossed over the north track when struck. She said: "The front had just crossed over and I happened to turn around and saw the car and said 'Oh, My!' . . . When I saw the car I think it was about fifteen feet away. . . . It was crossing the street." She testified that the street car struck the left front side of the automobile, turning it completely around and throwing it west upon the sidewalk. Her testimony is that the street car was running at thirty-five or forty miles an hour, and that the motorman sounded no warning signal; that a trailer, or second car, was attached to the car which struck the automobile, and after the collision the cars stopped with the rear end of the trailer about fifty feet west of the point of the collision. Further testimony of plaintiff, on direct examination, is as follows:

"Q. Did you have anything to do with the operating of your husband's automobile? A. No, sir. Q. You were sitting back there in the back seat? A. Yes, sir. Q. Were you paying any particular attention to the manner in which your husband was driving this automobile? A. I always do. Q. And did you undertake to tell your husband how he should operate or drive this automobile? A. He is very careful; I don't have to. Q. No; on this particular occasion; at this time did you undertake to warn your husband of any danger of street cars? A. No, sir. Q. You were sitting back there with your daughter? A. Yes, sir. Q. And the first time that you saw the street car was when it was fifteen feet away from you; that is, from the left-hand side of your car? A. Yes, sir."

On cross-examination plaintiff reiterated that she did not see the westbound car until it was about fifteen feet from her, at which time the automobile was "just crossing the north rail of the westbound brack." When asked if she called her husband's "attention to anything about the car," she said: "No, sir, I said I didn't have to because he is very careful in driving."

Plaintiff's daughter, who was with plaintiff on the rear seat of the automobile, testified that she saw the westbound street car when it was three or four hundred feet east of the point of the collision, at which time the automobile was about twenty-five feet from the car tracks, travelling at the rate of about ten miles per hour; but that before the crossing was reached the speed of the automobile was reduced to two or three miles per hour, so that it was "barely moving." She said that the front wheels of the automobile were "just about midway between the two tracks," when the collision occurred. She further testified that she did not watch the westbound street car, after she saw it three or four hundred feet away, but when the automobile was about a foot from the westbound track she glanced to the east and saw the car at the northeast corner of Kingshighway and St. Louis avenue, at which time it was going, in her opinion, thirty-five or forty miles an hour. And she also said that the "front part" of the automobile was hit by the street car, causing the automobile to be turned completely around and thrown upon the sidewalk.

Two young girls, witnesses for plaintiff, who were sitting upon some steps on St. Louis avenue "about ten houses" east of Kingshighway, testified that they were watching for automobiles, and that they saw the automobile in which plaintiff was riding as it passed the north building line of St. Louis avenue, and also observed the westbound street car, their attention being attracted thereto by reason of its rapid speed, which one of them placed at thirty or thirty-five miles per hour, her testimony tends to corroborate that of plaintiff and her daughter to the effect that the automobile was proceeding quite slowly as it crossed St. Louis avenue. One of them said that the automobile was "coming about moderately," and when it "neared" St. Louis avenue it "slowed up," and that it was "almost stopped" at the time of the collision.

For the purposes of this appeal it is unnecessary to

refer to the testimony for defendant further than to say that it tends to show that the street car was running at about twelve or fifteen miles an hour, while the automobile was proceeding at a high rate of speed—twenty-five or thirty miles per hour, according to some of the testimony; and that the automobile ran into the side of the street car.

Plaintiff submitted her case to the jury by a single instruction on the question of liability, which predicated a recovery upon the assignment of negligence in the petition charging a violation of the speed ordinance of the city of St. Louis.

Defendant, appellant here, makes but one assignment of error, and that is that the trial court erred in refusing to peremptorily direct a verdict for the defendant on the ground that plaintiff was shown to be guilty of contributory negligence as a matter of law, precluding a recovery.

At the outset, it may be well to note that it is beyond controversy that the negligence of plaintiff's husband, as driver of the automobile, if any, is not imputed to plaintiff. [See, Sluder v. Transit Co., 189 Mo. 107, 88 S. W. 648.; Stotler v. Railroad, 200 Mo. 107, 98 S. W. 509; Neff v. City of Cameron, 213 Mo. 350, l. c. 359, 111 S. W. 1139; Moon v. St. Louis Transit Co., 237 Mo. 425, 141 S. W. 870; Mahany v. Kansas City Rys. Co., 228 S. W. 821; Munger v. City of Sedalia, 66 Mo. App. 629, l. c. 632; Fechley v. Springfield Traction Co., 119 Mo. App. 358, 96 S. W. 421; Burton v. Pryor, 198 S. W. 1117; Leapard v. Kansas City Rys. Co., 214 S. W. 268.] It is not contended by defendant, however, that plaintiff is precluded from recovering by reason of any negligence of her husband, imputed to her, but that, under the evidence touching plaintiff's own conduct in the premises she must be held guilty of contributory negligence, as a matter of law, in failing to seasonably look toward the east, as well as toward the west, as the automobile approached the crossing; this upon the theory that had she

timely looked east she would have observed the oncoming westbound car in time to have warned her husband of the approach thereof. It is undoubtedly true that under the adjudicated cases in this State, in keeping with the law as generally announced by the authorities in this country, an occupant of a vehicle having the *status* of a guest therein is not under all circumstances entitled to entrust his safety wholly tó the driver of the vehicle and omit to take any precautions whatsoever for his own safety. And such an occupant has been held guilty of negligence as a matter of law in failing to take reasonable precautions for his or her own safety, under the circumstances of the particular case. [See: Fechley v. Springfield Traction Co., supra; Burton v. Pryor, supra; Leapard v. Kansas City Rys. Co., supra.] In these cases will be found authorities from other jurisdictions which it will not be necessary for us to discuss.

In Fechley v. Traction Co., supra, this court, through Judge GOODE, said:

"Few, if any, courts have held that an occupant of a vehicle may entrust his safety absolutely to the driver of a vehicle, regardless of the imminence of danger or the visible lack of ordinary caution on the part of the driver to avoid harm. The law in this State, and in most jurisdictions, is that if a passenger who is aware of the danger and that the driver is remiss in guarding against it, takes no care himself to avoid injury, he cannot recover for one he receives. This is the law not because the driver's negligence is imputable to the passenger, but because the latter's own negligence proximately contributed to his damage." (Citing cases).

We find the above excerpt from the Fechley case quoted in Stotler v. Railway, supra, and in Burton v. Pryor, supra. In the Fechley case the plaintiff was an invited guest in a buggy driven by one Pierce who drove upon a street car track in front of an oncoming car which struck the buggy causing plaintiff's injuries. It appears that neither he nor the plaintiff took any reasonable pre-

cautions to guard against the danger.; and the court, while holding that plaintiff was negligent as a matter of law, said:

"He (plaintiff) said he could have looked out of the buggy by merely pushing the curtain back with his hand. He was not bound to do this if Pierce's conduct was of such a character as to induce a reasonably prudent man to think there was no danger in driving across the tracks. But Fechley did not have the right to rely on the precaution taken by Pierce, unless, under the circumstances, a man of ordinary prudence would have relied on it."

Later in the opinion the court said that one under similar circumstances would have the "right to rely on the precaution taken by a driver, provided that precaution would strike a reasonable mind as adequate." And this view appears to be sanctioned in Burton v. Pryor, supra.

In Leapard v. Kansas City Rys. Co., supra, the plaintiff, who was riding in an automobile at the invitation of one Lane, sitting on the front seat with him, was denied a recovery for injuries sustained by reason of a collision between a street car and the automobile, on the ground that she was negligent in failing to take precautions for her own safety, relying implicitly on the driver; it appearing that the driver, when about thirty-two feet from the track, looked and saw the approaching car two hundred sixty-seven feet away, and proceeded forward at five or six per hour, without looking again until it was too late to avoid the collision.

In Beall v. Kansas City Rys. Co., 228 S. W. 834, where the plaintiff was a guest in the automobile, it was held that the question of her negligence in failing to keep a lookout for street cars was at most a question for the jury. The court said:

"Plaintiff was an invited guest and had nothing whatever to do with the operation of the automobile. . . . She was riding on the rear seat of the automo-

bile having the side curtains up, with her host and hostess on each side of her and their daughter, and the other two occupants of the front seat, in front of her. What opportunity had she to see or apprehend danger? And if she had, what could she have seen any better or more clearly than the driver himself saw? Her failure to warn the driver could have no effect, since he saw the car and knew of its presence but was not aware of its excessive speed."

In Corn v. Kansas City, etc., Ry. Co., 228 S. W. 78, decided by Division No. 1 of the Supreme Court, plaintiff was on the rear seat of her husband's automobile, driven by her husband, seated between her two daughters, and holding a grandchild upon her lap. The automobile was driven north on Fourth street, in the city of St. Joseph, until, in crossing Francis street, it was struck by a westbound interurban car, causing plaintiff's injuries. Plaintiff's evidence tended to show that the automobile was proceeding at about eight miles an hour, approaching Francis street, and when it was five or six feet south of defendant's tracks on the latter street, plaintiff's husband suddenly swerved it to the west in an attempt to avoid a collision with defendant's westbound car. It appears that for eleven or twelve years theretofore plaintiff had ridden in an automobile driven by her husband, knew him to be a careful driver and had every confidence in him, though, she says, she was always watching and listening, She testified that she did not notice whether her husband made efforts to put on the brakes; that she first saw the street car when the front end thereof was about even with the east building line of Fourth street, and was then afraid there would be a collision, since the motorman's head was turned, but said nothing to her husband; that if she had been driving she could perhaps have seen the car sooner. Her further testimony, as set out in the opinion, is as follows:

"She relied on husband's ability to carry her over

dangerous places. She took no precaution, only it was natural for her to watch and listen for alarms. In this case she relied implicitly on her husband. 'I didn't see danger in time. If I had been driving, I could have stopped it.' She was watching, too, looked to the west, and when she looked to the east it was close, too late. To a certain extent she relied on her husband. He was driving the car. She looked and listened for the alarm. She thought that if there was a car coming she would have heard the alarm. She looked north and west before she looked east; did not know why. It was too close to avoid a collision when she looked east. A little farther back when she looked west."

In that case, as here, it was contended that plaintiff was guilty of negligence as a matter of law in failing to take precautions for her own safety. Touching this matter, the court, through Commissioner SMALL, said:

"How a grandmother holding a six weeks old baby in her arms, sitting between two other women in the rear seat of an automobile, owned and being operated and driven by her husband, who had been driving a car for ten or twelve years, and who she thought was a perfectly capable driver, as a matter of law, was guilty of contributory negligence, under 'the circumstances shown by plaintiff's testimony in the case, we cannot understand. The authorities are all against the proposition. Defendant's demurrer to the evidence, therefore, was properly overruled."

Later in the course of the opinion, after a discussion of the instructions, it is said:

"Indeed, we do not mean to hold that there was any evidence of plaintiff's contributory negligence to go to the jury, but that, assuming there was, all phases of it were covered by defendant's instructions, which the court gave on that subject. Nor do we mean to rule that said instructions properly declared the law relating to plaintiff's duty in the premises. That question is not before us. We simply hold that defendant has no cause to com-

plain of the instructions of the court on the issue of plaintiff's contributory negligence.''

Subsequent to the decision in the Corn case, supra, the case of Friedman v. United Railways Co., 238 S. W. 1074, was before Division No. 2 of the Supreme Court. In that case the plaintiff was riding in a Ford coupe owned and driven by her husband. As her husband was attempting to turn the machine in Kingshighway, a short distance south of Forest Park, it was struck by a southbound street car. Plaintiff testified that she was looking but did not see the street car coming until just before the collision. On cross-examination she said:

''When I was five feet of the track I looked north and could see a block up the street car tracks and didn't see a street car until the moment of the collision. I was looking for one all the time. I never tell my husband, he always stops. I placed myself entirely in his hands and was depending upon him to avoid a street car. But I always look around. I looked also. I depended more upon my husband to discover the street car than I did upon myself.''

There was a verdict and judgment for the defendant below, and on plaintiff's appeal to the Supreme Court the judgment was affirmed, the court holding that the verdict was supported by substantial evidence, and that no error appeared in the record. In the course of the opinion, however, the court said:

''There was no reason why the approaching street car could not have been seen by appellant, as well as by her husband, as she said they were both looking for a street car. It was her duty thus to look (Burton v. Pryor, (Mo. App.), 198 S. W. 1117; Leapard v. Railways Co., (Mo. App.), 214 S. W. 268, and cases cited), and failure to perform this duty, or to perform it badly, was negligence.''

In the opinion in the Friedman case no reference is made to the Corn case, supra.

The Corn case is referred to in an opinion of the

Springfield Court of Appeals in Sorrell v. Payne, 247 S. W. 462, as not being controlling upon facts there involved. In that case the plaintiff was riding in an automobile as the guest of the owner, who was driving. There was a verdict and judgment for the defendant below and the trial court, on the authority of the Corn case, granted the plaintiff a new trial for supposed errors in giving instructions. It was held on appeal that the instructions properly submitted the question of plaintiff's negligence, and that the new trial was improvidently granted.

It would be unwise for us to undertake to formulate a rule for the determination of cases of this general character. It has been wisely said that error often lurks in generality. While the Friedman case is the latest decision of the Supreme Court that has come to our attention, having to do with the duty of one occupying the position of guest in a vehicle to take precautions for his own safety, we do not regard that case as controlling here. Under the evidence in this record, we think that the case is controlled by the decision of the Supreme Court in the Corn case, supra. In view of the fact that plaintiff was seated in the rear seat of the automobile; that her husband was an experienced and careful driver; and that upon approaching the north line of St. Louis avenue he slackened the speed of the automobile to two or three miles per hour, or so that it was barely moving, thus indicating to a reasonable mind that he was proceeding with due cauton, we are of the opinion that plaintiff should not be denied a recovery as being conclusively guilty of contributory negligence.

Again, we do not think that it conclusively appears that plaintiff's negligence, if any, in failing to look to the east, as did her daughter, directly contributed to cause her injuries. Her husband was not a witness, and the record is barren of any testimony as to what he. did in regard to looking for street cars, or whether he saw or did not see the westbound car. For aught that we

know he may have seen the car at or about the time when it passed the east line of Kingshighway, and when he had brought his automobile almost to a standstill, but misjudged the speed of the car and thought that he could safely cross the tracks. If we can say, as a matter of law, that ordinary care on the part of plaintiff required her to look for a car coming from the east so as to warn her husband thereof, if need be, it would appear that we could not well say, as a conclusion of law, that, when reasonable necessity for said warning arose, it would have been effective. [See: Corn v. Railways Co., supra; Beall v. Railways Co., supra.] In the Corn case it is said:

"Unless the warning would have avoided the accident, it would have been of no avail to give it, and the failure to give it would not have contributed to causing the accident."

We think that the trial court did not err in submitting the question of plaintiff's negligence to the jury. In this view the judgment should be affirmed, and it is so ordered. *Becker* and *Daues, JJ.,* concur.